[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2012
JOHN LEY
CLERK

No. 11-14130
Non-Argument Calendar
_____

D.C. Docket No. 9:11-cr-80055-DMM-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NORBERTO CASTILLO-GAMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 24, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Norberto Castillo-Gamez appeals his convictions and sentence for conspiring to and transporting illegal aliens within the United States for private gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (a)(1)(A)(ii).[1]  After a thorough review of the record, we affirm.

Castillo-Gamez and co-conspirator Marino Velasquez-Santizo were charged with one count of conspiracy and three counts of transporting illegal aliens for private gain.  Prior to trial, both defendants moved to suppress the evidence obtained during the traffic stop that led to their arrest on the ground that the Border Patrol agent lacked probable cause or reasonable suspicion to conduct the stop.

At a suppression hearing, Border Patrol agent Cesar Barrientos testified that he was conducting traffic surveillance on I-95 looking for high-capacity vehicles when he observed a tan minivan in the center lane.  The minivan appeared to be loaded down, although it had only four passengers, and it had tinted windows and Alabama license plates.  When he pulled next to the minivan, the driver appeared stiff and did not make eye contact.  He ran a check on the license plate and found a note cautioning that the driver might not be the registered owner.  These facts led him to believe that the minivan was carrying illegal aliens, so he conducted a stop.

---

[1]  Although Castillo-Gamez has completed his twelve-month prison term, he remains on supervised release; thus his appeal is not moot.  *Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995).

Barrientos explained that the use of high-capacity vehicles, especially those with tinted windows, and the appearance that the vehicle is weighted down are all indicative of alien smuggling. He further explained that smugglers are more likely to use I-95 than the Florida Turnpike because the Turnpike charges tolls and has cameras. Based on this testimony, the district court concluded that Barrientos had reasonable suspicion to stop the minivan, and thus the court denied the motion to suppress.

At trial, Barrientos testified that after his arrest, Castillo-Gamez gave a sworn statement in which he admitted that he was hired by "Marcelino" to transport the aliens to New York and back for $500. Although he did not know the passengers, he admitted that he knew they were illegal. Castillo-Gamez told Barrientos that the passenger in the front seat of the minivan, Velasquez-Santizo, was in charge of collecting fees.

Velasquez-Santizo[2] testified that Marcelino asked him to transport illegal aliens and that he had hired a man named Norberto to drive the van. Castillo-Gamez objected to Velasquez-Santizo's testimony on hearsay grounds, but the court admitted the statement as a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E). Velasquez-Santizo stated that he was responsible for

---

[2] Velasquez-Santizo pleaded guilty to conspiracy and testified for the government.

3

collecting fees from the aliens and that he received $400 for his involvement. Velasquez-Santizo and Castillo-Gamez both drove the minivan at times, picking up and dropping off passengers at Marcelino's instruction in various locations. After they had picked up a passenger in Maryland, they headed south on I-95. Castillo-Gamez was driving when they were stopped. One of the passengers, Haricel Hernandez-Izquierdo, testified that he paid $240 for transportation to Florida from Maryland.

Castillo-Gamez testified in his own defense, denying that he was paid to drive the van. Instead, he explained that he only drove to help Velasquez-Santizo, who was tired. He further denied that he told Barrientos that he knew the passengers were illegal aliens.

The jury convicted Castillo-Gamez on all counts. The probation officer calculated Castillo-Gamez's advisory guidelines range including a two-level enhancement for obstruction of justice. Castillo-Gamez's sentencing range was 15 to 21 months' imprisonment. Castillo-Gamez objected to the calculations, arguing that he was entitled to a minor-role reduction, U.S.S.G. § 3B1.2, and that the enhancement for obstruction of justice was in error. He also argued that he should receive a downward departure under § 5K2.0 and 5H1.6 because he cared for his mentally disabled girlfriend. He further requested a downward variance.

4

The district court denied the minor-role reduction, finding that Castillo-Gamez was not less culpable than his co-conspirators, but did not apply the enhancement for obstruction of justice. This changed the advisory guideline range to 10 to 16 months. The court sentenced Castillo-Gamez to 12 months' imprisonment. On appeal, Castillo-Gamez raises five issues: (1) the district court improperly denied his motion to suppress; (2) the evidence was insufficient to convict him of conspiring to transport illegal aliens or of transporting illegal aliens; (3) the district court improperly admitted Velasquez-Santizo's testimony; (4) these cumulative errors rendered his trial unfair; and (5) the sentence imposed was procedurally and substantively unreasonable. We address each in turn.

I. Motion to Suppress

When reviewing a district court's denial of a motion to suppress evidence, we review factual findings for clear error and the application of the law to those facts *de novo*, construing all facts in the light most favorable to the party who prevailed in the district court. *United States v. Ponce-Aldona*, 579 F.3d 1218, 1221 (11th Cir. 2009).

The Fourth Amendment provides that the "right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. If an officer reasonably suspects that a

vehicle may contain illegal aliens, he may briefly stop the car and "'investigate the circumstances that provoke suspicion.'" *United States v. Bautista-Silva*, 567 F.3d 1266, 1271–72 (11th Cir. 2009) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). This reasonable suspicion must be more than a mere hunch, and it must be based on "specific articulable facts" and rational inferences from those facts. *Id.* at 1272 (quoting *Brignoni-Ponce*, 422 U.S. at 884). A court evaluating whether an officer had reasonable suspicion to stop a vehicle must consider the totality of the circumstances to determine whether the agent had "'a particularized and objective basis for suspecting legal wrongdoing.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Courts "may not consider each fact only in isolation, and reasonable suspicion may exist even if each fact 'alone is susceptible of innocent explanation.'" *Id.* (quoting *Arvizu*, 534 U.S. at 277–78).

Here, the district court properly concluded that Barrientos had a reasonable suspicion that the minivan carried illegal aliens. As Barrientos testified, the minivan had out-of-state license plates, tinted windows, and appeared to be weighted down. Barrientos knew that smugglers often used I-95 to avoid the cameras and tolls on the Florida Turnpike. And when he pulled along side the minivan, Barrientos noticed that Castillo-Gamez appeared stiff and did not make eye contact. Considering these facts together, Barrientos had a reasonable

6

suspicion that the minivan contained illegal aliens.  *See Bautista-Silva*, 567 F.3d at 1272–74.

II.  Sufficiency of the Evidence

Generally, we review *de novo* whether there is sufficient evidence to support a conviction, drawing all inferences in favor of the jury's verdict.  *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010).  But where, as here, a defendant fails to renew his motion for judgment of acquittal after presenting evidence on his own behalf, that failure "operates as a waiver of the motion for acquittal and forecloses any review of the sufficiency of the evidence except where a miscarriage of justice would result."  *United States v. Tapia*, 761 F.2d 1488, 1491 (11th Cir. 1985) (citation and internal quotation marks omitted).  A miscarriage of justice would result only if "'the evidence on a key element of the offense is so tenuous that a conviction would be shocking.'"  *Id.* at 1492 (quoting *United States v. Landers*, 484 F.2d 93, 94 (5th Cir. 1973)).

Under 8 U.S.C. § 1324, "[a]ny person who[,] knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports . . . such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law," and "for the purpose of . . . private financial gain" shall be fined or imprisoned for up

7

to ten years.  8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).  The same section criminalizes conspiring to commit that offense.  *Id.* § 1324(a)(1)(A)(v)(I).  To obtain a conspiracy conviction under this subsection, the government was required to prove the existence of "an agreement to commit the substantive offense." *United States v. Reme*, 738 F.2d 1156, 1161 (11th Cir. 1984).  Evidence of a defendant's acts in furtherance of a conspiracy to transport illegal aliens can support an inference that the defendant agreed to commit the substantive offense of transporting illegal aliens.  *Id.*  If a defendant testifies at trial, the jury may disbelieve him and treat his untruthfulness as substantive evidence of guilt.  *United States v. Bacon*, 598 F.3d 772, 776 (11th Cir. 2010).

We conclude that Castillo-Gamez has not shown that the evidence on any element of his offenses was so tenuous that his convictions are shocking, resulting in a miscarriage of justice.  Barrientos testified that he stopped a van with four passengers who were illegal aliens, and Castillo-Gamez was the driver.  Velasquez-Santizo testified about the conspiracy to transport illegal aliens.  And although Castillo-Gamez denied any participation in a conspiracy, the jury was free to disbelieve his testimony and treat it as substantive evidence of his guilt.  Because the evidence showed that Castillo-Gamez conspired to transport illegal aliens and that he actually transported them, the evidence was sufficient to support his

convictions.

III.  Admission of Hearsay Evidence

We review a district court's admission of evidence for an abuse of discretion.  *United States v. Hill*, 643 F.3d 807, 840 (11th Cir. 2011).  The district court's conclusions that (1) a conspiracy existed, (2) Castillo-Gamez, Velasquez-Santizo, and Marcelino participated in it, and (3) Marcelino's statements were made in furtherance of the conspiracy are reviewed for clear error.  *United States v. Garcia*, 13 F.3d 1464, 1472–73 (11th Cir. 1994).  We review *de novo* evidentiary challenges based on the Confrontation Clause.  *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010).

Generally, hearsay evidence is inadmissible.  Fed. R. Evid. 802.  But an out-of-court statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay.  Fed. R. Evid. 801(d)(2)(E).

The admission of certain evidence can violate a defendant's rights under the Confrontation Clause, which protects a defendant's right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The admission of statements made by coconspirators in furtherance of a conspiracy, however, does not violate a defendant's constitutional right to confrontation because such statements are not

testimonial. *See Crawford v. Washington*, 541 U.S. 36, 55 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial–for example, . . . statements in furtherance of a conspiracy."); *United States v. Underwood*, 446 F.3d 1340, 1346–48 (11th Cir. 2006). Further, statements of an uncharged co-conspirator may be admitted as long as the existence of the conspiracy itself has been established. *United States v. Salisbury*, 662 F.2d 738, 740 (11th Cir. 1981).

Here, the evidence established the existence of a conspiracy between Castillo-Gamez, Velasquez-Santizo, and Marcelino. The evidence further showed that the statements were made during and in furtherance of the conspiracy. Thus, Marcelino's statements, admitted through Velasquez-Santizo's testimony, were admissible because they were not hearsay. Further, although Castillo-Gamez argues that these statements were the only evidence showing his involvement in the conspiracy, in a statement to Barrientos, Castillo-Gamez admitted being part of a conspiracy to transport illegal aliens at Marcelino's direction. Accordingly, the district court did not err in admitting Velasquez-Santizo's testimony about Marcelino's statements.

IV. Cumulative Error

"[T]he cumulative effect of multiple errors may so prejudice a defendant's

10

right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005) (internal quotation marks omitted). If a defendant claims that cumulative errors exist but fails to show any error, we will affirm. *See United States v. Augustin*, 661 F.3d 1105, 1127–29 (11th Cir. 2011).

As noted above, Castillo-Gamez has failed to demonstrate any error, much less cumulative error. Therefore, he has not shown that his trial was unfair or that he is entitled to a new trial.

V. Sentencing

We review sentences for procedural and substantive reasonableness under a deferential abuse of discretion review. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). We lack the authority to review claims that the district court erred in denying a downward departure when the district court understood its authority to depart. *United States v. Llanos-Agostadero*, 486 F.3d 1194, 1199 (11th Cir. 2007). A district court's denial of a minor role reduction is reviewed for clear error. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010).

A sentence is procedurally unreasonable if the district court improperly calculates the guideline range, considers the Sentencing Guidelines to be

11

mandatory, does not consider the proper statutory factors, imposes a sentence based on clearly erroneous facts, or does not explain adequately the sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). A sentence is substantively unreasonable if, considering the totality of the circumstances, the court weighed the factors in 18 U.S.C. § 3553(a) unreasonably and imposed a sentence that did not achieve the purposes of sentencing outlined in § 3553(a). *Irey*, 612 F.3d at 1189. Ordinarily, we expect a sentence within the advisory guideline range to be reasonable. *United States v. Martinez-Gonzalez*, 663 F.3d 1305, 1311 (11th Cir. 2011).

Here, Castillo-Gamez challenges the denial of his minor-role reduction, the court's failure to apply a downward departure or variance, and the failure to give him credit for time served.

### a. minor-role reduction

Under U.S.S.G. § 3B1.2, a defendant is entitled to a two-level decrease if he "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). An adjustment is appropriate if a defendant "play[ed] a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* § 3B1.2, comment. (n.3(A)). To determine whether a defendant is entitled to a minor role reduction, the district court should consider his conduct in comparison

12

to the relevant conduct attributed to him in determining his base offense level and in comparison to the conduct of the other participants. *Bernal-Benitez*, 594 F.3d at 1320. The defendant bears the burden of proving his minor role by a preponderance of the evidence. *Id.* A defendant "is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *United States v. Rodriguez De Varon*, 175 F.3d 930, 944 (11th Cir. 1999) (*en banc*).

Here, Castillo-Gamez has not met his burden to show that he was entitled to a minor role reduction. Castillo-Gamez points to nothing other than his own testimony to show that he was substantially less culpable than others. But the testimony of Velasquez-Santizo and Barrientos show that Castillo-Gamez was at least as culpable as Velasquez-Santizo. Thus, Castillo-Gamez has not shown that the district court clearly erred in refusing to apply this reduction.

### b. downward departure

Although Castillo-Gamez argues that the district court erred in refusing to depart downward pursuant to U.S.S.G. § 5H1.6, he does not contend that the district court misunderstood its authority to do so. Accordingly, we lack jurisdiction to review that claim. *Llanos-Agostadero*, 486 F.3d at 1199.

Additionally, Castillo-Gamez has not shown that the district court

13

unreasonably declined to vary downward under 18 U.S.C. § 3553(a). The court considered the § 3553(a) factors as well as its belief that Castillo-Gamez was untruthful when he testified at trial. The court concluded that a 12-month total sentence, within the applicable guideline range, was appropriate. Castillo-Gamez has not demonstrated that the district court abused its discretion, and we find nothing unreasonable in the sentence imposed.

### c. credit for time served

Under 18 U.S.C. § 3585, in certain circumstances, a defendant should receive credit toward the service of a term of imprisonment for time spent in official detention before the date on which his sentence commences. 18 U.S.C. § 3585(b). This section, however, does not authorize a district court to compute and award credit for time served at sentencing. *United States v. Wilson*, 503 U.S. 329, 333 (1992). Rather, "Congress has indicated that a computation of credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing." *Id.*; *see also United States v. Jayyousi*, 657 F.3d 1085, 1118 n.5 (11th Cir. 2011) (acknowledging that the Attorney General gives credit for time served in pretrial confinement).

Before the district court, Castillo-Gamez requested a *sentence* of time served, but he did not request *credit* for time served. Even if he had, the district

court did not have the authority to give him such credit. *Wilson*, 503 U.S. at 333.

In sum, Castillo-Gamez has failed to show that his sentence was procedurally or substantively unreasonable. The district court properly calculated his guideline range, explained the sentence, and weighed the § 3553(a) factors before imposing a total sentence of 12 months, within his advisory guideline range and below the statutory maximum of 10 years. Because Castillo-Gamez's total sentence is procedurally and substantively reasonable, we affirm.

**AFFIRMED.**