PRYOR, Circuit Judge:
This appeal presents the question whether a veteran border patrol agent, while on patrol in a marked vehicle in a corridor known for human smuggling in South Florida, reasonably suspected that a sport-utility-vehicle with California license plates containing six adult males of apparently Hispanic descent was transporting illegal aliens when the driver changed speeds erratically on a slippery road and the passengers appeared nervous and refused to acknowledge the agent’s attempts to gain their attention. The district court ruled that the agent lacked reasonable suspicion to stop the vehicle, which was driven by Juan Bautista-Silva, and the district court granted Bautista-Silva’s motion to suppress all statements and physical evidence obtained as a result of the stop. We conclude that the agent’s decision to stop the vehicle was based on specific and articulable facts that, viewed cumulatively and in the light of the agent’s extensive experience, created a reasonable suspicion of illegal activity. We reverse and remand for further proceedings.
I. BACKGROUND
Our discussion of the background of this prosecution is divided in two parts. We first discuss the facts leading to the stop of *1269 Bautista-Silva’s vehicle. We then discuss Bautista-Silva’s motion to suppress all statements and physical evidence obtained as a result of the stop.

A. Facts Leading to the Stop of Bautista-Silva’s Vehicle

Senior Agent Richard Cole testified that he joined the United States Border Patrol in 1992. From 1992 to 1998, Agent Cole was stationed in Nogales, Arizona, where he “was involved with many aspects of enforcing immigration nationality law.” In 1998, Agent Cole transferred to Orlando, Florida, where he continued to assist with enforcing immigration law. Agent Cole has “monitored traffic for human smuggling operations” throughout his career and has performed countless investigative stops based on “reasonable suspicion for illegal aliens or alien smuggling.”
On March 20, 2008, Agent Cole and Agent Sergio Perez were monitoring southbound traffic on Interstate 95 in Brevard County, Florida, as they had done throughout the previous three years, based on intelligence provided by the Border Patrol that illegal aliens used that interstate highway to travel to South Florida. The uniformed agents were in Agent Cole’s official marked vehicle, and Agent Cole was in the driver’s seat of the vehicle. The vehicle was parked at a rest stop in a “very wide, open area” that allowed the agents to observe, and be observed by, southbound traffic.
Around 11:00 a.m., Agent Cole saw a silver Chevrolet Suburban that contained Bautista-Silva and five passengers. As the Suburban approached the agents’ location, it was “driving along with traffic,” “more or less behind” a “pickup truck pulling a flat trailer with some objects in it.” As the Suburban passed the agents it suddenly “seemed to get up alongside” the truck. Agent Cole observed that the Suburban had California license plates, the driver and passenger in the front of the vehicle were Hispanic adult males, and the other four passengers were also adult males. Agent Cole suspected that the Suburban contained illegal aliens and decided to pursue the Suburban to investigate.
After Agent Cole drove onto the highway, the Suburban increased its speed. As he attempted to “catch up” with the Suburban, Agent Cole observed that “it was traveling very fast because it was passing a lot of vehicles in the left lane.” It took Agent Cole about “two or three minutes” to catch up with the Suburban, during which time he drove “in excess of 100 miles an hour.” When Agent Cole first caught up with the Suburban, Agent Cole’s vehicle was positioned behind the Suburban and both vehicles were traveling “about 90 miles an hour.”
When Agent Cole “pulled up alongside” the Suburban “to get a better look,” the Suburban “immediately slowed down very quickly.” Agent Cole decelerated to maintain his position beside the Suburban, opened the passenger window of his vehicle, and tried ’to get the attention of the passengers of the Suburban. The passengers appeared nervous, did not acknowledge the agents, and “just continued to look straight ahead.” Agent Cole then stopped the Suburban. Bautista-Silva and all five of the passengers admitted they were illegal aliens from Mexico, and the agents took all six men into custody.

B. Bautista-Silva’s Motion To Suppress AU Statements and Physical Evidence Obtained as a Result of the Stop

Bautista-Silva was charged with knowingly transporting five illegal aliens within the United States for private financial gain. 8 U.S.C. §§ 1324(a)(l)(A)(ii), (a)(1)(B)®. Bautista-Silva moved to dismiss the indictment or, in the alternative, *1270 to suppress all statements and physical evidence obtained as a result of the stop, on the ground that the agents lacked reasonable suspicion to stop his vehicle. The government responded that the agents had reasonable suspicion to stop the vehicle based on their experience, specific and articulable facts, and rational inferences drawn from those facts that the vehicle contained illegal aliens.
The district court held an evidentiary hearing, at which Agent Cole testified on behalf of the government, and BautistaSilva presented the testimony of a defense investigator. Agent Cole testified that his decision to stop Bautista-Silva’s vehicle was based on several factors that, in his experience, suggested the vehicle contained illegal aliens: (1) the Suburban was the kind of large vehicle often used by smugglers to transport illegal aliens; (2) the driver and all five passengers were Hispanic adult males; (8) the Suburban was registered in California, a known staging area for human smuggling; (4) the Suburban was traveling south on 1-95, a route known to be used by smugglers to transport aliens to South Florida; (5) as it passed Agent Cole’s parked patrol vehicle, the Suburban appeared to hide behind another vehicle in an attempt to avoid detection; (6) Bautista-Silva drove erratically on a slippery road after passing Agent Cole, when he first accelerated in an apparent attempt to evade the agents and decelerated immediately after Agent Cole caught up in an apparent attempt to let the agents pass; and (7) the passengers of the Suburban appeared nervous, stared straight ahead, and refused to acknowledge Agent Cole’s attempt to gain their attention.
On cross-examination, Agent Cole testified that he was familiar with the Treasury Enforcement Communications System, a computer database of information about vehicles that cross the border of the United States, but he did not check that system for information about Bautista-Silva’s vehicle. Agent Cole acknowledged that several of the factors on which he based his decision to stop Bautista-Silva’s vehicle were susceptible of innocent explanation: (1) it was not unusual on that portion of I-95 to see large vehicles, vehicles with California license plates, or vehicles with multiple Hispanic passengers; (2) it was not unusual, in the morning, to “see people going to and from work with many males in the car”; and (3) 1-95 is a “heavily traveled road[.]” Agent Cole also testified that nothing about the Suburban itself made the vehicle appear suspicious or overloaded.
The district court ruled that the agents lacked reasonable suspicion to stop Bautista-Silva’s vehicle. The district court credited Agent Cole’s testimony about the events but concluded that most of the factors on which Agent Cole based his decision to stop Bautista-Silva’s vehicle were “too commonplace to support [reasonable suspicion] or to be given meaningful weight in a ‘totality of the circumstances’ analysis.” According to the district court, it was of “some relevance” that BautistaSilva’s vehicle was large, was traveling south on 1-95, had California license plates, and contained passengers that appeared to be Hispanic, but the district court found that those facts were insufficient to justify the stop. The district court also found that it “would not be proper to assign much weight” to the type of vehicle that Bautista-Silva was driving because “agents are hardly unanimous in their belief that vehicles such as SUVs, trucks and vans are the vehicles of choice for those engaged in smuggling of aliens.” The court weighed against the factors relied on by Agent Cole the lack of proximity of the Suburban to the Mexican border, the normal appearance of the Suburban, Agent Cole’s failure to describe the passengers of *1271 the Suburban as “distinctively Mexican,” and that “the agents were not aware of any other reasons to suspect this particular vehicle, such as an anonymous tip that it was transporting aliens or a report from other agents that it had recently been observed in an area known for illegal border crossings.”
The district court concluded that “[t]he legality of the stop ... primarily rests on two factors: the behavior of the vehicle, and the behavior of its occupants.” The district court concluded that neither of these factors could create a reasonable suspicion of illegal activity. The district court opined that “the driving behavior of the Suburban was not remarkable” because Agent Cole “was not certain that the Suburban was attempting to avoid his notice as it first approached him[.]” The district court also opined that BautistaSilva’s acceleration and deceleration were “not sufficiently different from the way others routinely drive on Interstate 95 to warrant suspicion.” According to the court, Agent Cole’s suspicion that Bautista-Silva accelerated after passing his parked patrol vehicle to evade the agents was undermined by the fact that there was no evidence that Bautista-Silva attempted to exit the highway, despite the availability of an off-ramp after Bautista-Silva passed Agent Cole and before Agent Cole caught up to him.
The district court ruled that the behavior of the passengers of the Suburban could not be considered in determining whether the agents had reasonable suspicion to stop the vehicle because “actions of a defendant in staring straight ahead ‘cannot weigh in the balance in any way whatsoever!)]’ ” The district court denied Bautista-Silva’s motion to dismiss the indictment but granted Bautista-Silva’s motion to suppress all statements and physical evidence obtained as a result of the stop. This interlocutory appeal by the government followed.
II. STANDARDS OF REVIEW
A motion to suppress is a mixed question of law and fact. We review the factual findings of the district court for clear error and the application of law to those facts de novo. United States v. Mercer, 541 F.3d 1070, 1073-74 (11th Cir.2008) (per curiam). Because Bautista-Silva prevailed in the district court, we construe the facts in the light most favorable to him. Id. at 1074. Whether there was reasonable suspicion to justify the stop is a question of law that we review de novo. Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir. 2005).
III. DISCUSSION
The government argues that the district court erred when it ruled that the agents lacked reasonable suspicion to stop Bautista-Silva’s vehicle because Agent Cole’s decision to stop the vehicle was based on specific and articulable facts that, viewed cumulatively and in the light of Agent Cole’s extensive experience, created a reasonable suspicion that the vehicle contained illegal aliens. The government argues that the district court erred because, although the court acknowledged its duty to consider the totality of the circumstances, the court “analyzed the facts in isolation, strained to find innocent explanations for those facts, and failed to view those facts through the eyes of an experienced Border Patrol agent.” We agree. The record establishes that Agent Cole reasonably suspected that Bautista-Silva’s vehicle contained illegal aliens.
“[W]hen an officer’s observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the *1272 car briefly and investigate the circumstances that provoke suspicion.” United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). Although “[t]he reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch,” United States v. Powell, 222 F.3d 913, 917 (11th Cir.2000) (internal quotation marks omitted), “the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.” United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002). The officer’s reasonable suspicion must be based on “specific articulable facts, together with rational inferences from those facts.” Brignoni-Ponce, 422 U.S. at 884, 95 S.Ct. at 2582.
To determine whether Agent Cole had reasonable suspicion to stop Bautista-Silva’s vehicle, we “must look at the totality of the circumstances ... to see whether the [agent] ha[d] a particularized and objective basis for suspecting legal wrongdoing.” Arvizu, 534 U.S. at 273, 122 S.Ct. at 750 (internal quotation marks omitted). “This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.” Id. at 273, 122 S.Ct. at 750-51 (internal quotation marks omitted). We may not consider each fact only in isolation, and reasonable suspicion may exist even if each fact “alone is susceptible of innocent explanation.” Id. at 277-78, 122 S.Ct. at 753.
The Supreme Court has held that many of the factors that led Agent Cole to stop Bautista-Silva’s vehicle “may be taken into account in deciding whether there is reasonable suspicion to stop a [vehicle].” Brignoni-Ponce, 422 U.S. at 884, 95 S.Ct. at 2582. In Brignoni-Ponce, the Court provided a nonexhaustive list of some of the factors that “[o]fficers may consider”: (1) “the characteristics of the area in which” the vehicle is encountered; (2) the proximity of the vehicle to the border; (3) “the usual patterns of traffic on the particular road”; (4) an agent’s “previous experience with alien traffic”; (5) “information about recent illegal border crossings in the area”; (6) “[t]he driver’s behavior”; (7) and “[a]spects of the vehicle itself.” Id. at 884- 85, 95 S.Ct. at 2582. The Court also stated that “the apparent Mexican ancestry of the occupants” of a vehicle is a relevant factor, but that this factor alone does not justify stopping a vehicle. Id. at 885- 87, 95 S.Ct. at 2582-83.
Agent Cole’s decision to stop Bautista-Silva’s vehicle was based on “specific articulable facts, together with rational inferences from those facts, that reasonably warranted]” Agent Cole’s suspicion that the vehicle contained illegal aliens. Id. at 884, 95 S.Ct. at 2582. Agent Cole testified that his decision to stop Bautista-Silva’s vehicle was based on seven factors that, in his experience, caused him to suspect the vehicle contained illegal aliens. These factors, “[t]aken together ... sufficed to form a particularized and objective basis for ... stopping [Bautista-Silva’s] vehicle, making the stop reasonable within the meaning of the Fourth Amendment.” Arvizu, 534 U.S. at 277-78, 122 S.Ct. at 753.
Although the district court stated that the factors on which Agent Cole based his decision to stop the vehicle did not create a reasonable suspicion of illegal activity “even when added together,” the district court erroneously reviewed those factors in isolation and rejected most of the factors because each factor was susceptible of innocent explanation. The Supreme Court has rejected this kind of “divide- and-conquer analysis” and made clear that reasonable suspicion may exist even if each *1273 fact “alone is susceptible of innocent explanation.” See id. at 273-78, 122 S.Ct. at 750-53. The correct approach examines the “totality of the circumstances.” Id. at 273, 122 S.Ct. at 750.
The district court erred when it concluded that “it would not be proper to assign much weight” to the kind of vehicle that Bautista-Silva was driving because “agents are hardly unanimous in their belief that vehicles such as SUVs, trucks and vans are the vehicles of choice for those engaged in smuggling of aliens.” This approach does not allow agents “to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.” Id. at 273, 122 S.Ct. at 750-51 (internal quotation marks omitted). Our objective inquiry concerns Agent Cole’s experiences based on his testimony, not the purported experiences of other agents who did not testify about the kinds of vehicles used to smuggle illegal aliens.
The district court also erred when it opined that Bautista-Silva’s driving behavior, both as he passed Agent Cole’s patrol vehicle and afterwards, did not create a reasonable suspicion of illegal activity. The court stated that Bautista-Silva’s conduct as he passed the patrol vehicle “was not remarkable” because “[Agent] Cole himself was not certain that the Suburban was attempting to avoid his notice as it first approached him; at most he thought it might have been, in his words, ‘drifting’ behind the pickup truck.” The district court erred because reasonable suspicion does not require absolute certainty. See id. at 274, 122 S.Ct. at 751; Powell, 222 F.3d at 917. This movement of the Suburban was a suspicious and relevant factor. The dissent argues that we erroneously construe Agent Cole’s testimony about Bautista-Silva’s passing of the patrol vehicle in favor of the government, but we disagree. We instead determine whether Agent Cole’s testimony, which the district court credited, supports the decision to stop Bautista-Silva’s vehicle as based on a reasonable suspicion of illegal activity.
The district court confused the issue of Bautista-Silva’s erratic driving by giving weight to a red herring about whether Bautista-Silva left the highway at the first available exit. Although the district court determined that Bautista-Silva’s conduct after he passed the patrol vehicle was “the agents’ most significant observation,” the district court remarkably opined that “the Suburban’s acceleration and deceleration— unaccompanied by any attempt to exit the highway or take other obviously evasive action — was not sufficiently different from the way others routinely drive on Interstate 95 to warrant suspicion.” Agent Cole testified that Bautista-Silva’s sudden acceleration to approximately 90 miles per hour after passing the agents was suspicious because, in his experience, when alien smugglers realize they have been noticed by the Border Patrol, they often attempt to evade pursuit. We disagree with the conjecture of the district court that Bautista-Silva’s failure to avail himself of the first available exit off the highway after he accelerated renders Agent Cole’s suspicion about Bautista-Silva’s erratic driving unreasonable. Bautista-Silva’s acceleration to 90 miles an hour on an interstate highway in advance of a marked patrol car was suspicious, if for no other reason, because it was illegal. Agent Cole also testified that Bautista-Silva’s abrupt deceleration after the agents caught up to his vehicle was suspicious because, in Agent Cole’s experience, smugglers will often decelerate to allow Border Patrol agents to pass. Agent Cole also testified that Bautista-Silva’s rapid acceleration and deceleration concerned him because *1274 “[t]he road was slippery[,]” as it had been “raining off and on that day.”
We disagree with the district court that there is a “ ‘heads I win, tails you lose’ flavor to basing a ‘reasonable suspicion’ on [Bautista-Silva’s driving behavior].” Agent Cole reasonably suspected that Bautista-Silva first attempted to escape by accelerating and then, when the escape attempt proved unsuccessful, decelerated to allow the agents to pass. BautistaSilva’s erratic driving behavior on a slippery road supported Agent Cole’s reasonable suspicion that the vehicle contained illegal aliens.
The district court also cited United States v. Escamilla, 560 F.2d 1229, 1233 (5th Cir.1977), for the proposition that “actions of a defendant in staring straight ahead ‘cannot weigh in the balance in any way whatsoever!,]” but there are two problems with that proposition. First, the facts of Escamilla are distinguishable. In Escamilla, the drivers of two different vehicles looked straight ahead as their respective vehicles proceeded through an intersection, and both drivers failed to acknowledge the presence of a marked patrol car parked at the intersection. 560 F.2d at 1230. In contrast, in this appeal five passengers of a vehicle appeared nervous, “continued to look straight ahead,” and ignored Agent Cole’s obvious and repeated attempts to attract their attention. Second, the reasoning of the district court conflicts with the more recent approach required by the Supreme Court. In Arvizu, the Court made clear that it has “deliberately avoided reducing [the concept of reasonable suspicion] to a neat set of legal rules,” and rejected the attempt by the Ninth Circuit “clearly [to] delimit an officer’s consideration of certain factors.” 534 U.S. at 274-75, 122 S.Ct. at 751 (internal quotation marks omitted). The Court stated that “a driver’s slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance ... while quite unusual in another,” and a detaining officer is “entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area’s inhabitants.” Id. at 275-76, 122 S.Ct. at 752. We must consider the behavior of the passengers of the vehicle, and that behavior, along with the totality of the circumstances that existed when the agents stopped Bautista-Silva’s vehicle, created a reasonable suspicion that the vehicle contained illegal aliens.
IV. CONCLUSION
We REVERSE the order that granted Bautista-Silva’s motion to suppress, and we REMAND for further proceedings consistent with this opinion.