[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15693
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20368-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENZIL ROY MONTAGUE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 15, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Denzil Montague Jr. appeals his conviction and 235-month sentence for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, he first attacks the district court's order denying his motion to suppress the firearm and ammunition obtained during a *Terry*[1] stop and search. A known informant had called the police with a tip that Montague was carrying a gun, and Montague does not dispute that the informant was reliable. However, he submits that, since carrying a concealed firearm with a permit is legal in Florida, the police officers did not have reasonable suspicion that he was involved in any illegal activity that violated Florida state law because they did not know whether he had a permit. Second, Montague argues that his sentence, at the low end of the applicable guideline range, was substantively unreasonable.

## I. MOTION TO SUPPRESS

A district court's ruling on a motion to suppress presents a mixed question of law and fact. *United States v. Bautista-Silva*, 567 F.3d 1266, 1271 (11th Cir. 2009). We review the district court's factual findings for clear error and review *de novo* the district court's application of the law to the facts. We also review *de novo* whether reasonable suspicion justified the investigatory stop. *Id.* All facts

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

are construed in the light most favorable to the prevailing party below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

"Evidence obtained in violation of the Fourth Amendment must be suppressed." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). The Fourth Amendment, however, does not prohibit a police officer from seizing a suspect for a brief, investigatory stop where the officer has a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). "[R]easonable suspicion is a less demanding standard than probable cause," but requires "at least a minimal level of objective justification for making the stop" in light of the totality of the circumstances. *Jordan*, 635 F.3d at 1186.

In connection with a *Terry* stop, a police officer who has reason to believe that he is dealing with an armed and dangerous individual may also conduct a reasonable search for weapons in support of his own protection and that of others, even if he is not absolutely certain that the individual is armed. *Terry*, 392 U.S. at 27. An officer may conduct a *Terry* pat-down search for weapons on a suspect's person if the requisite reasonable suspicion is present, and that search may continue when an officer feels a concealed object that he reasonably believes may be a weapon. *United States v. Clay*, 483 F.3d 739, 743-44 (11th Cir. 2007).

3

Here, the Government contends that when the officers conducted the *Terry* stop and frisk, they had a reasonable suspicion that Montague was committing the offense of carrying a concealed firearm. A security guard who had previously provided reliable information reported to one of the officers that Montague had a firearm, and Montague does not contest that the guard was a reliable source. Montague argues, however, that even with the information provided by the guard, the officers could not have reasonably suspected that he was engaging in criminal activity because under Florida law it is not illegal to possess a concealed weapon if the carrier has a permit.

Florida law provides: "A person who carries a concealed firearm on or about his or her person commits a felony of the third degree." Fla. Stat. § 790.01(2) (2006). This prohibition does not apply, however, "to a person licensed to carry . . . a concealed firearm pursuant to the provisions of s. 790.06." *Id.* § 790.01(3).[2] The absence of a license is not itself an element of the crime; instead, proof of a license may be raised as an affirmative defense. *Watt v. State*, 31 So.3d 238, 242 (Fla. 4th DCA 2010).

---

[2] The owners of such a permit must have it in possession at all times when in actual possession of a concealed firearm, and must display the license upon demand by a law enforcement officer. *Id.* § 790.06(1).

Montague relies upon *Regalado v. State*, 25 So.3d 600 (Fla. 4th DCA 2009), a Florida Fourth District Court of Appeal decision, to argue that there was no reasonable suspicion that he was involved in illegal activity because possession of a concealed firearm is not presumptively a violation of Florida law. *Regalado* held,

> Because it is legal to carry a concealed weapon in Florida, if one has a permit to do so, and no information of suspicious criminal activity was provided to the officer other than appellant's possession of a gun, the mere possession of a weapon, without more, cannot justify a *Terry* stop.

25 So.3d at 601.

In contrast, in *State v. Navarro*, 464 So.2d 137, 139-40 (Fla. 3rd DCA 1985), the *en banc* Florida Third District Court of Appeal, while not explicitly addressing the possibility of a concealed weapons permit,[3] found that probable cause existed to pat down and search a defendant where the officer observed the bulge of what appeared to be a concealed firearm protruding from the defendant's jacket. The court adopted the dissenting opinion from the panel decision, holding that the "officers' observation of the outline of a firearm amounted to *probable*

---

[3] The wording of Fla. Stat. § 790.01 was different at the time *Navarro* was decided, but, like the current statute, it provided that a person carrying a concealed firearm was guilty of a felony in the third degree and separately stated that this provision did not apply to individuals with a license to carry concealed firearms.

*cause* to believe that [the defendant] was carrying a concealed weapon, justifying not merely a pat-down, but a search." *Id.* at 139; *see also State v. Burgos*, 994 So. 2d 1212, 1214 (Fla. 5th DCA 2008) (holding that a suspect's admission that he was carrying a weapon supported a reasonable suspicion that he was committing a crime because "[a]lthough some citizens do have the right to carry concealed firearms lawfully, the vast majority do not").

"[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts" unless and until they are overruled by the Florida Supreme Court. *Pardo v. State,* 596 So.2d 665, 666 (Fla. 1992). "[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it. Contrarily, as between District Courts of Appeal, a sister district's opinion is merely persuasive." *Id.* at 666-67 (quotation omitted).

The holding of *Navarro*, a Third District Court of Appeal case, is binding upon Montague's case because it occurred in that district, and Florida courts would only consider the holding of *Regalado*, a Fourth District Court of Appeal case, as persuasive. *See Pardo,* 596 So.2d at 666-67. Under the facts of this case, the officers did not need to ascertain whether Montague had a permit before they conducted a *Terry* stop and search because they had reasonable suspicion that he

6

was carrying a concealed weapon based on a reliable informant's tip that Montague was carrying a gun.

## II. SUBSTANTIVE REASONABLENESS OF MONTAGUE'S SENTENCE

We review a sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Although we do not automatically presume a sentence within the guidelines range is reasonable, we 'ordinarily expect a sentence within the Guidelines range to be reasonable.'" *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (ellipsis omitted) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

At the sentencing hearing, the district court, in considering the 18 U.S.C. § 3553(a) factors, found that, based on his criminal history, Montague had a "complete disregard for the law" and "ha[d] continued to possess firearms from time to time," which suggested that he was "a danger to the community." The district court did not abuse its discretion by imposing a 235-month sentence at the low end of the applicable guideline range. Accordingly, we affirm Montague's sentence as substantively reasonable.

## III. CONCLUSION

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**