[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14783
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cr-00010-RWS-SSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUDIEL LARA-MONDRAGON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 9, 2013)

Before HULL, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Audiel Lara-Mondragon appeals his conviction for possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5).  On March 2, 2011, six law enforcement agents, acting on information that Lara-Mondragon was the owner of a semi-automatic rifle that was wanted in connection with an ongoing investigation, arrived at his residence without a warrant.  Three of the agents encountered his wife, Hortencia Lara, at the front porch, while the remaining three agents positioned themselves along both sides of the residence.  When questioned by the agents about her legal status, Lara admitted that both she and Lara-Mondragon were illegally present in the United States.  She was then detained and removed from the front porch.  Lara-Mondragon remained inside the residence with his three children and refused to exit.  Approximately 25 minutes later, a female arrived at the residence to pick up her young child, who had been entrusted to Lara-Mondragon and his wife for caretaking.  Lara-Mondragon eventually exited his residence with the child and his own children, at which time the agents arrested him, conducted a search of the residence, and discovered the rifle.

Lara-Mondragon later pleaded guilty to one count of possession of a firearm by an illegal alien, but reserved the right to appeal the district court's denial of his motion to suppress evidence—including the rifle—obtained during the encounter.  On appeal, he does not contest the validity of the arrest or post-arrest search.  He argues only that the district court erred by: (1) finding that the three agents who

2

strayed from his front door during the initial encounter had a legitimate police purpose for doing so, and thus concluding that the encounter qualified as a consensual "knock and talk"; and (2) concluding that the agents' presence on his property for approximately 25 minutes after they detained his wife was authorized under *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 1884–85 (1968).

A motion to suppress evidence presents a mixed question of law and fact. *United States v. Bautista-Silva*, 567 F.3d 1266, 1271 (11th Cir. 2009). We review the district court's factual findings for clear error, and its application of the law to the facts de novo. *Id.* Further, all facts are construed in the light most favorable to the prevailing party below. *Id.* Finally, we afford substantial deference to the factfinder's credibility determinations. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003). The district court is in a better position to judge the credibility of witnesses before it, and we will not disturb a finding of fact "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (internal quotation marks omitted). After careful review, we affirm.

## I.

On appeal, Lara-Mondragon first contends that the district court erred in finding that the three agents who strayed from his front door during the initial

encounter acted for a proper purpose and without their weapons drawn; therefore, the court's conclusion that the encounter was a consensual "knock and talk" is untenable.  We disagree.

The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by consensual encounters with police.  *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006).  Police conduct in such instances is analogized to, and delimited by, the regular conduct of ordinary private citizens.  *See id.*  This means that, absent express orders from the person in possession, "[o]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just a[s] any private citizen may."  *Id.* (alteration in original).  While a "knock and talk" may, by the terms of its designation, presuppose an encounter at the residence's front door, officers may move away from the front door so long as they do so for a legitimate purpose unconnected to a search of the premises.  *See id.* at 1205 (noting that officers may depart from the front door as part of a legitimate attempt to contact the occupants of a residence).  Importantly, as has long been recognized, officer safety is a concern whenever officers and arrestees or potential arrestees are in close proximity.  *See, e.g., United States v. Robinson*, 414 U.S. 218, 226, 94 S. Ct. 467, 472 (1973) (adopting search-incident-to-arrest rule in part for reasons of officer safety).

If the citizen's cooperation is induced by "coercive means" or if a reasonable person would not "feel free to terminate the encounter," however, then the encounter is no longer consensual, a seizure has occurred, and the citizen's Fourth Amendment rights are implicated. *See United States v. Drayton*, 536 U.S. 194, 201, 122 S. Ct. 2105, 2110 (2002).

> In determining whether a police-citizen encounter was consensual or whether a seizure has occurred, we consider the following factors: whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

*United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (internal quotation marks omitted). These factors are not applied rigidly, however, but are instead used as guidance. *Id.* "The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Id.* "The government bears the burden of proving voluntary consent based on a totality of circumstances." *Id.*

In this case, the district court did not err in its conclusion that the initial encounter between the agents, Lara-Mondragon and Lara constituted a consensual "knock and talk" that did not implicate the Fourth Amendment. The lead investigator testified that the agents initiated the encounter to investigate (1) the location of a rifle that was displayed in an illegal alien's photograph, (2) where that

5

person was holding that rifle, and (3) who informed the agents that the rifle belonged to appellant. As the agents approached Lara-Mondragon's residence, he immediately retreated into his home and appeared to lock the door. With this evidence as backdrop, and mindful of the ever-present concern for officer safety in such situations, the district court did not err in finding that the three agents who positioned themselves alongside the residence did so for legitimate safety reasons. Moreover, the lead agent testified that no weapons were drawn during the encounter.

Lara-Mondragon's further contention that the encounter was coercive is meritless. The agents did not block Lara-Mondragon's path, as evidenced by his retreat into his house, nor did they obstruct his wife's movement until she was subsequently detained on admission that she and Lara-Mondragon were illegally present in this country. Although six agents were present, including three alongside the perimeter of the residence, no weapons were drawn. Until the moment that his wife was handcuffed—at which time the encounter undisputedly ceased to be a consensual "knock and talk"—she was targeted only with questions, not commands. The agents did not request any identifying documentation or physically handle his wife in any way. In short, the agents' conduct during the initial encounter did not restrain the movement of Lara-Mondragon or his wife, and

it lacked the use or showing of coercive force.  The district court's conclusion was sound.

## II.

Next, Lara-Mondragon challenges the district court's conclusion regarding the validity of the agents' presence on his property during the 25 minutes that immediately followed his wife's detention until the arrival of the other child's mother—that is, from approximately 3:55 p.m. to 4:20 p.m.  He maintains that the duration of his wife's detention and the agents' accompanying presence on his property were not authorized under *Terry*.

Absent probable cause to make an arrest, "[l]aw enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity."  *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993).  Reasonable suspicion requires more than a hunch; it requires that the totality of the circumstances create some minimal level of objective justification for the belief that the person is engaged in unlawful conduct. *Id.* at 1220–21.  "The reasonableness of the officers' conduct must be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief

7

that the action taken was appropriate." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) (internal quotation marks omitted).

"In *Terry*, the Supreme Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop." *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004) (internal quotation marks omitted). First, the courts examine whether the police action was justified at its inception. *Id.* Second, the courts consider whether the stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 1145 (internal quotation marks omitted). To determine whether the manner and length of an investigatory detention during a *Terry* stop was reasonable under the second prong, we apply four non-exclusive factors. *Id.* at 1146. The factors are: (1) the purpose of the detention; (2) the diligence of the police in conducting the investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *Id.* "There is no rigid time limitation or bright line rule regarding the permissible duration of a *Terry* stop," *id.* at 1147, but detentions of less than one hour have been repeatedly upheld as reasonable. *See, e.g., United States v. Sharpe*, 470 U.S. 675, 688, 105 S. Ct. 1568, 1576 (1985) (finding 20 minutes to be reasonable); *Courson v. McMillian*, 939 F.2d 1479, 1492 (11th Cir. 1999) (finding 30 minutes to be reasonable); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (finding 50 minutes to be reasonable).

Here, the agents' presence on Lara-Mondragon's property for 25 minutes following the detention of his wife was reasonable. First, the legitimacy of the detention's purpose—that is, to further investigate the legal status of Lara-Mondragon and his wife—is not in dispute. Second, the lead investigative agent testified that shortly after Lara-Mondragon's wife was handcuffed, he was in regular and continuing contact with: (1) law enforcement authorities, to check on the legal status of Lara-Mondragon; and (2) the U.S. Attorney's office, to discuss the development of probable cause and the possibility of securing a warrant to search the residence. Moreover, the investigator diligently remained in contact with the U.S. Attorney's office until his attention shifted to the removal of a child from the residence when the child's mother arrived on the property approximately 25 minutes after Lara-Mondragon's wife was detained—that is, until the moment that Lara-Mondragon concedes the agents' presence was justified by exigent circumstances.

Third, with respect to Lara-Mondragon, whose Fourth Amendment rights alone are presently at issue, the agents' presence was limited in scope and intrusiveness. Although they remained on his property during the contested period, they positioned themselves away from the residence and they did not attempt to enter, demand entry, or search the interior. Finally, the 25-minute duration of the agents' presence is well within the bounds of reasonableness demarcated in

9

previous cases. *See Sharpe*, 470 U.S. at 688, 105 S. Ct. at 1576; *Courson*, 939 F.2d at 1492; *Hardy*, 855 F.2d at 761.

For the above reasons, we affirm the district court's denial of Lara-Mondragon's suppression motion, as well as his conviction.

**AFFIRMED.**