[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10613

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHNTAVIOUS TILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:20-cr-00013-MW-MJF-1

_____

Before BRASHER, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

Defendant Johntavious Tiller appeals his convictions for possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On appeal, Tiller challenges the district court's denial of his motion to suppress evidence seized during his arrest. After review, we affirm.

## I. BACKGROUND FACTS

The following facts are based on Corporal Thomas Young's testimony at the suppression hearing, which the district court credited. At about 6:00 p.m. on October 29, 2019, Corporal Young of the Bay County Sheriff's Office was looking for Travis Shutes based on a federal warrant. Corporal Young was in an unmarked car in the area of a bar and liquor store called Foghorn's that Shutes was known to frequent. Foghorn's was the location of past fights, and complaints of drug use and drug sales. Shutes also was the only suspect in a recent strong-arm robbery at Foghorn's.

While surveilling the property, Corporal Young noticed defendant Tiller walking around the parking lot, sitting and talking briefly with people in their cars, and driving in and out of the parking lot. Corporal Young did not know either Shutes or Tiller, but had a digital picture of Shutes. From his location across the road, a distance of about 200 feet, Corporal Young believed Tiller

looked similar to Shutes, and notified his shift supervisor that he had spotted Shutes in Foghorn's parking lot.

Based on his experience observing drug deals, Corporal Young also believed defendant Tiller's activities in the parking lot were consistent with drug dealing. Corporal Young explained that these transactions are quick, with the individuals first meeting up to negotiate a deal. The drug dealer then retrieves the product and brings it back so the transaction can take place.

Because Corporal Young believed that defendant Tiller was Shutes and that he was engaged in drug activity, Corporal Young decided to make contact with him. As Tiller drove away and returned to the parking lot once more, Corporal Young pulled in behind Tiller's car. As he did so, Corporal Young saw a passenger exit Tiller's car. Corporal Young did not try to speak to or stop the passenger because as the sole deputy there, doing so would not have been safe.

Corporal Young walked up to defendant Tiller's car, and Tiller rolled his window down "just slightly." Corporal Young introduced himself as an investigator with the Bay County Sheriff's Office and explained that he was investigating Tiller's suspicious activity that he believed involved drug transactions. Corporal Young asked Tiller for his identification. Tiller appeared agitated and refused to produce his identification several times. Corporal Young spent several minutes attempting to calm Tiller down.

While Corporal Young talked with Tiller, a second officer arrived and requested a K-9 unit to respond to the scene. At that

point, Tiller produced his identification.  Corporal Young entered Tiller's driver's license number into his car computer and learned that the license was valid.  At that point, Corporal Young realized Tiller was not Shutes.

Nonetheless, Corporal Young continued to investigate the suspected drug activity by Tiller that he had witnessed.  Corporal Young ran Tiller's identification through state and national crime databases to research his recent criminal history and began filling out a field interview card to document his contact with Tiller.  As he was doing so, the K-9 unit arrived and gave a positive alert on Tiller's car.  Corporal Young estimated that the K-9 unit arrived six minutes after being requested and that the entire encounter with Tiller from first contact to the drug dog's alert lasted ten minutes at most.

Subsequently, in Tiller's car, officers found bulk amounts of crack and powder cocaine, smaller plastic baggies of individually packaged drugs, a digital scale, and a firearm and ammunition.

## II.  DISTRICT COURT RULING

At the conclusion of the suppression hearing and in a subsequent written order, the district court denied Tiller's motion to suppress the evidence seized during the October 29, 2019 stop. The district court credited Corporal Young's testimony and found that Corporal Young had reasonable suspicion to stop Tiller.

Specifically, the district court found that Corporal Young's reasonable suspicion for the initial stop was based on: (1) Tiller's presence in a high crime area known for drug transactions; (2)

Tiller's actions in the parking lot that Corporal Young knew, based on experience and training, were consistent with hand-to-hand drug transactions; and (3) what appeared to Corporal Young to be a resemblance to Shutes, a wanted robbery suspect. The district court noted also that, when interacting with Corporal Young, Tiller "acted nervous, anxious, and belligerent" and "refused to turn over his driver's license," which "only buttressed the Officer's reasonable suspicion."

The district court observed from pictures introduced at the hearing that Tiller and Shutes do not look alike. The district court acknowledged, however, that Corporal Young saw an African American man with short hair and dark complexion like Shutes's, and who was approximately the same age and build as Shutes, and had a hunch that Tiller was Shutes. The district court stated that while Corporal Young's hunch alone would not be enough, his observations of Tiller's activities consistent with hand-to-hand drug dealing—walking to another car, talking to someone briefly, getting out and driving away, then immediately coming back and parking again—in a high crime area known for drug transactions rose to the level of reasonable suspicion.

Ultimately, a jury convicted Tiller of possession with intent to distribute the crack cocaine found in his car on October 29, 2019, and of a separate drug offense committed on September 21, 2019. Later, Tiller entered a conditional guilty plea to possession of the firearm found in his car on October 29, 2019. The district court imposed concurrent 60-month sentences for the two drug offenses

and a consecutive 60-month sentence for the firearm offense, for a total sentence of 120 months' imprisonment.

### III.  DISCUSSION

On appeal, Tiller does not challenge his conviction for the September 2019 drug offense or his sentences.  Rather, Tiller appeals only the motion to suppress as to the crack cocaine and firearm found in his car on October 29, 2019.  In that regard, Tiller argues that the district court clearly erred in finding Corporal Young's hearing testimony credible and that Corporal Young did not have reasonable suspicion to conduct the investigatory stop on October 29.

### A.     Standards of Review

In reviewing a district court's denial of a motion to suppress, we review its fact findings "for clear error, considering all the evidence in the light most favorable to the prevailing party." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir.) (*en banc*) (quotation marks omitted), *cert. denied*, 143 S. Ct. 95 (2022).  We review *de novo* the district court's application of the law to those facts.  *Id.*

With respect to credibility findings, we must accept the district court's "choice of whom to believe unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quotation marks omitted).  In other words, "we defer to the district court's factual determinations unless the district court's understanding of the facts is 'unbelievable.'" *Id.* at 1256.

## B.      General Principles

The Fourth Amendment prohibits "unreasonable searches and seizures."    U.S. Const. amend. IV.    Under the Fourth Amendment, a law enforcement officer may conduct a brief investigatory stop, known as a *Terry* stop,[1] if the officer (1) has a reasonable suspicion that the person detained has participated in or is about to participate in criminal activity, and (2) the stop is "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quotation marks omitted); *see also United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021).

Tiller's appeal focuses on the first prong, arguing that the stop was not justified <u>at inception</u> by reasonable suspicion.  Tiller does not argue that the officers unlawfully extended the stop.  *Cf. Campbell*, 26 F.4th at 881-82 (explaining that officers must diligently conduct their investigation and "cannot unlawfully prolong a stop").

Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  "Reasonable suspicion may 'be based on commonsense judgments and inferences about human behavior.'" *Gonzalez-Zea*, 995 F.3d at 1303 (quoting *Wardlow*, 528 U.S. at 125).  However, because "at least a minimal level of objective justification for

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

making the stop" is required, the law enforcement officer "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Wardlow*, 528 U.S. at 123-24 (quotation marks omitted).

To determine whether reasonable suspicion existed, we look to the totality of the circumstances. *United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009). "We may not consider each fact only in isolation, and reasonable suspicion may exist even if each fact alone is susceptible of innocent explanation." *Id.* (quotation marks omitted).

Some circumstances that may support a finding of reasonable suspicion to conduct a *Terry* stop include: (1) an officer's observation of conduct consistent with street-level, hand-to-hand drug transactions, even without witnessing an actual exchange; *United States v. Lopez-Garcia*, 565 F.3d 1306, 1313-14 (11th Cir. 2009), (2) a person's presence in a "high crime area" known for drug dealing and drug use; *Wardlow*, 528 U.S. at 124, and (3) a person's nervous, evasive behavior. *Id.* A person's physical resemblance to a known felony suspect may also support reasonable suspicion. *See United States v. Hensley*, 469 U.S. 221, 229 (1985) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.").

## C.    Credibility Determination

At the outset, the district court did not clearly err in finding Corporal Young's testimony was credible.  Tiller has not shown in any way that the district court's finding that Corporal Young was credible was contrary to the laws of nature or improbable on its face. *See Holt*, 777 F.3d at 1255.

For example, Corporal Young's testimony—that he understood Shutes to be at large, that he was looking for Shutes, that from afar he believed Tiller resembled the picture of Shutes, and that Tiller's actions in Foghorn's parking lot were consistent with hand-to-hand drug transactions—was not internally inconsistent or unbelievable. *See id*. at 1255-56.

Although Tiller was able later to show with pictures that he and Shutes did not look alike, the fact remains that, as the district court found, both were the same race, had a dark complexion, short hair, the same build, and were approximately the same age. The district court credited Corporal Young's testimony that when he initiated the stop, he believed Tiller "resembled" Shutes.

Notably too, Corporal Young did not know Shutes and first observed Tiller across the street and from a distance of about 200 feet.  Tiller has not shown the district court's credibility finding was contrary to the laws of nature or improbable on its face.

Defendant Tiller points out that, at trial, he presented evidence that Shutes was arrested in Arkansas on August 15, 2019, and was still in custody at the time of Corporal Young's stop on October 29, 2019.   Tiller suggests this evidence contradicts

Corporal Young's testimony that he was actively looking for Shutes and that Shutes had committed a "recent" strong-arm robbery at Foghorn's in Bay County, Florida. But at trial Corporal Young testified that he was unaware of Shutes's August 2019 arrest when he was surveilling Foghorn's in October 2019. Further, the fact that Shutes was arrested and detained in Arkansas ten weeks before the stop is not inconsistent with Corporal Young's testimony that Shutes was suspected of committing a "recent" strong-arm robbery at Foghorn's. In sum, Tiller's trial evidence about where Shutes was at the time of the stop does not render Corporal Young's testimony that he was looking for Shutes so improbable that no factfinder would believe it. *See id.*

Similarly, contrary to defendant Tiller's assertion, it was not clear error to find, based on Corporal Young's testimony, that Tiller's behavior in Foghorn's parking lot was consistent with hand-to-hand drug transactions. Tiller stresses that Foghorn's was open to the public when Corporal Young was conducting surveillance and that Corporal Young did not see Tiller conduct a hand-to-hand exchange.

But Corporal Young did not merely observe Tiller walking in or out of Foghorn's like a patron. Instead, he saw Tiller walk across the parking lot, to and from his car to other people's cars, briefly talk with people inside their cars, and then drive away in his own car and return a short time later. As Corporal Young explained, in his experience investigating drug activity, Tiller's pattern of movement in the parking lot was consistent with street-

level drug dealing, in which the seller first negotiates the deal with the buyer and then retrieves the drugs to complete the transaction.

## D.    Reasonable Suspicion

The district court also did not err in concluding, based on the totality of the circumstances, that Corporal Young had reasonable suspicion to conduct the investigatory stop. While conducting surveillance, Corporal Young believed Shutes was at large on a federal warrant. Corporal Young knew that drug use and drug sales occurred in the area around Foghorn's and that Shutes, who was involved in this kind of activity, frequented Foghorn's. Corporal Young observed Tiller, who he thought looked like Shutes, walking around the Foghorn's parking lot. Tiller got in and out of cars to talk to people and came and went from the parking lot in his own car, all actions Corporal Young knew, based on his training and experience, were consistent with negotiating drug deals and then going to get the drugs to complete the transactions. It was not necessary for Corporal Young to see Tiller make a hand-to-hand exchange to reasonably suspect him of drug dealing. *See Lopez-Garcia*, 565 F.3d at 1313-14.

Tiller argues that his nervous and uncooperative behavior to law enforcement should have held "very little significance." While we conclude Corporal Young already had reasonable suspicion that Tiller was, or had been, engaged in criminal activity before Corporal Young spoke with Tiller, we agree with the district court that Tiller's agitation and initial refusal to provide Corporal Young with his driver's license "only buttressed" that suspicion.

Construing the evidence in the light most favorable to the government, Tiller's actions consistent with hand-to-hand drug dealing in and around the Foghorn's parking lot, an area known for drug dealing, coupled with Corporal Young's belief that Tiller resembled Shutes, a known felony suspect who frequented the area, created reasonable suspicion to briefly detain Tiller and investigate whether he was in fact Shutes and whether he was engaged in drug dealing.

## IV.  CONCLUSION

For all these reasons, we find no error in the district court's denial of Tiller's motion to suppress and affirm Tiller's convictions.

**AFFIRMED.**