[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 24-13196

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JUSTIN JAMAAL NETTLES,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00038-MCR-1

————————————————

Before JORDAN, LUCK, and KIDD, Circuit Judges.

PER CURIAM:

Justin Jamaal Nettles appeals his conviction for being a felon in possession of a firearm. He contends that the district court erred in denying his motion to suppress by concluding that the officer had reasonable suspicion to conduct a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

## I

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Generally, evidence obtained by unconstitutional means is inadmissible because it is "the fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Because rulings on motions to suppress evidence present mixed questions of law and fact, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*. *See United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). The facts are construed in favor of the prevailing party, and we afford substantial deference to the district court's explicit and implicit credibility determinations. *See id.* at 1303. We accept the district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that

no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quotation marks omitted).

Citizen encounters with police generally fall into three categories: (1) consensual encounters without coercion or detention, (2) brief investigatory detentions, and (3) full-scale arrests. *See United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). The first category, a consensual encounter, depends on "whether a reasonable person would feel free to terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 201 (2002). Specifically, we must "imagine how an objective, reasonable, and innocent person would feel, not how the particular suspect felt." *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021). To determine how the reasonable person would feel, courts look at all relevant circumstances, including the following:

> whether a citizen's path is blocked or impeded; whether the officers retained the individual's identification; the suspect's age, education and intelligence; the length of the . . . detention and questioning; the number of police officers present; whether the officers displayed their weapons; any physical touching of the suspect[;] and the language and tone of voice of the police.

*Id.* (quotation marks omitted, alterations in original). We have found a consensual encounter where a police officer, among other things, "flashed his blue lights, but only to identify himself as a police officer because he arrived at the scene in an unmarked car." *Perez*, 443 F.3d at 778.

The second category, a brief investigative stop, constitutes a seizure that implicates Fourth Amendment principles. *See Perez*, 443 F.3d at 777. Importantly, however, "[t]he Fourth Amendment does not require a [law enforcement officer] who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972). On the contrary, under *Terry*, an "intermediate response" is recognized as important to and permissible for conducting "good police work." *Id.* "The temporary, investigative detention of a person is constitutionally permissible if there exists, at the time of the detention, a reasonable suspicion that the person detained has been, is, or is about to be involved in criminal activity." *United States v. Smith*, 201 F.3d 1317, 1322 (11th Cir. 2000). But the law enforcement officer "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quotation marks omitted).

In examining whether there is reasonable suspicion to effectuate a *Terry* stop exists, we consider the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009) (quotation marks omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (quotation marks omitted). We "may not consider each fact only in isolation, and

24-13196          Opinion of the Court          5

reasonable suspicion may exist even if each fact alone is susceptible of innocent explanation." *Id.* (quotation marks omitted). "[T]o satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990). "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014).

Once an officer makes a *Terry* stop, he does not have unfettered authority to detain a person indefinitely, and instead, the detention is "limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983). A *Terry* stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Ordinary inquiries that are related to the stop's purpose typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015).

## II

Under Florida law, "[a] person driving or in charge of any motor vehicle may not permit it to stand unattended without first stopping the engine, locking the ignition, and removing the key." Fla. Stat. § 316.1975(1). But this prohibition does not apply to "[a] vehicle that is started by remote control while the ignition, transmission, and doors are locked." § 316.1975(2)(d).

The district court did not err in denying Mr. Nettles' motion to suppress because the officer had reasonable suspicion for the stop. The officer saw Mr. Nettles' car parked, unattended, with its ignition and headlights on, at a parking space in a Raceway gas station. The officer activated his lights and approached Mr. Nettles, who by then had come out of the Raceway convenience store. The officer asked Mr. Nettles for his driver's license, but he said he did not have it on him and admitted that his license was suspended. Two officers then arrived at the gas station parking lot in their marked vehicles. At this point, Mr. Nettles was subject to a seizure requiring reasonable suspicion. *See Perez*, 443 F.3d at 777. After Mr. Nettles unsuccessfully tried to flee, officers searched his car and found a gun which formed the basis of the felon-in-possession charge. Although Mr. Nettles says that he was not in violation of § 316.1975(1) because he had a car key which allowed him to start the car remotely, the officer would not have known that when he effectuated the *Terry* stop. Indeed, the officer did not find the key until he searched Mr. Nettles following his apprehension. Even assuming that the officer was mistaken about Mr. Nettles' possible

24-13196               Opinion of the Court                    7

violation of the statute, that mistake was a reasonable one and did not vitiate reasonable suspicion. *See Heien*, 574 U.S. at 61.

### III

We affirm Mr. Nettles' conviction.

**AFFIRMED.**