UNITED STATES of America, Plaintiff–Appellee,

v.

Walter George STRICKLAND, Jr., Defendant–Appellant.

No. 89–8856

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

June 5, 1990.

Edward T.M. Garland, Atlanta, Ga., for defendant-appellant.

Deborah A. Griffin, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellant, Walter G. Strickland, entered a conditional guilty plea to possession with the intent to distribute approximately ten kilograms of cocaine in violation of 21 U.S.C. §§ 846 & 841(a)(1), and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) & 5871. Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, Strickland reserved the right to appeal the district court's denial of his motion to suppress evidence discovered during a search of his automobile. Because we find that information gained by the officer during a valid consensual search of the vehicle provided probable cause to sustain the validity of a continuation of that search beyond the scope of consent, we affirm the district court.

## FACTS

On February 23, 1989, at approximately 1:10 a.m. on Interstate 75, Georgia State Trooper David Brack observed a 1989 Mer-

cury Marquis LS driven by appellant travelling over the dotted white markers between the two lanes of travel. According to Officer Brack's uncontroverted testimony at the suppression hearing, he began to follow the vehicle and observed that the driver was "continually over or straddled the divider lane and then went back into his lane and came back over the divider lane once more...." Brack testified that he routinely stopped every vehicle being driven in this manner. When he stopped the Mercury he told appellant "the reason I stopped you, you were weaving. I was concerned that you might have been tired or sleepy or the possibility you might have been drinking. I wanted to stop and check and make sure you're all right." Strickland produced the necessary documentation for the vehicle and satisfied Brack that he was not intoxicated. Officer Brack testified that at that point, Strickland was free to leave.

Nevertheless, Officer Brack then told Strickland: "We have a lot of trouble with people couriering narcotics, weapons, unusually large amounts of money, other types of contraband." According to the officer's undisputed testimony, when the subject of a search was mentioned, Strickland responded "I don't have any objections at all ... let me get the key and open the trunk." Strickland opened the trunk to the vehicle and then asked the officer whether he could sit in the police vehicle because it was cold outside. Before proceeding with the search Brack explained to Strickland, "I want you to understand that I would like to search the entire contents of your automobile ... if you want to sit down, that's fine with me, to get out of the cold but I want you to understand that I would like to search the entire contents of your car." Strickland responded "That's fine."[1]

Officer Brack testified at the suppression hearing that he immediately directed his search to the spare tire in the trunk of the Mercury. Brack explained that the spare tire seemed uncharacteristically large for that type of automobile, that the placement of the tire seemed unusual, and that its cover did not seem to fit properly over it. After removing the cover, he discovered further suspicious discrepancies with respect to the tire:

> OFFICER BRACK: [I] noticed that it was a Sears tire and I thought that initially to be kind of unusual. I noticed the rim and it was rusted on the tire and bent somewhat and I knew that was definitely out of place. I looked at the tires on the car and they were Firestone tires and I undid the bolt that holds the tire down and as I pulled the tire out, I knew that it was very obvious that something was inside the tire.
>
> MR. SOLIS [Asst. U.S. Atty.]: Why was it so obvious?
>
> OFFICER BRACK: The tire was extremely heavy, weighted with something and when the tire was removed from the trunk and it was rolled, you could hear what was inside just flumping, you know, as it would roll, it would flmp, flmp.

Officer Brack then instructed a deputy who had arrived at the scene to cut open the tire. Inside the tire was an automatic weapon, a silencer, a thirty round ammunition clip, and ten kilograms of cocaine.

## ISSUES

Appellant contends that the district court erred in refusing to suppress the evidence found during Officer Brack's search. Appellant first argues that the search of his vehicle was impermissible because it was conducted after an improper pretextual stop. Second, appellant urges that even if the stop was appropriate, the cutting open of the tire was impermissible because it exceeded the scope of consent.

---

**1.** In response to Strickland's request, Officer Brack directed appellant to sit in the back seat of the police vehicle. This area is separated from the front seat area by a Plexiglas shield. Additionally, the doors of the back seat area cannot be opened from the inside. Appellant relies on these facts to suggest that his consent to search the Mercury was the product of an illegal detention in the police vehicle. This contention is absurd because Strickland initiated the request to sit in the police vehicle and there is no evidence that he would have been kept in the car, up until the point of his arrest, had he indicated that he wished to get out.

PRETEXTUAL STOP

█ A search of an individual or a vehicle is improper if the initial seizure of the person or vehicle was unlawful. *See United States v. Miller*, 821 F.2d 546, 547 (11th Cir.1987). An officer may conduct a brief investigative stop of a vehicle, analogous to a *Terry*-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *United States v. Smith*, 799 F.2d 704, 707 (11th Cir.1986); *see Delaware v. Prouse*, 440 U.S. 648, 655–56, 661, 663, 99 S.Ct. 1391, 1397, 1400–01, 59 L.Ed.2d 660 (1979); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); *see, e.g., United States v. Brignoni–Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (permitting border patrol officers to stop vehicles upon reasonable suspicion that they contain illegal aliens). Investigatory stops are invalid if they are solely based on "unparticularized suspicion" or "inarticulate hunches." *Terry*, 392 U.S. at 22, 27, 88 S.Ct. at 1880, 1883; *Smith*, 799 F.2d at 707; *see Prouse*, 440 U.S. at 661, 99 S.Ct. at 1400. Likewise, investigatory stops are invalid as pretextual unless "a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *Smith*, 799 F.2d at 708 (emphasis original). The government does not suggest, nor could we find, a reasonable suspicion of criminal activity sufficient to justify an investigatory stop in this case. *Cf. Sharpe*, 470 U.S. at 682 & n. 3, 105 S.Ct. at 1573 & n. 3 (delineating facts supporting reasonable suspicion of narcotics trafficking that justified investigative stop of vehicle).

█ Alternatively, a police officer may stop a vehicle "[w]hen there is ... probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations" relating to the operation of motor vehicles. *Prouse*,

440 U.S. at 661, 99 S.Ct. at 1400; *see United States v. Bates*, 840 F.2d 858, 860 (11th Cir.1988); *Smith*, 799 F.2d at 709; *see, e.g., United States v. Hollman*, 541 F.2d 196, 198 (8th Cir.1976) (police had probable cause to stop vehicle because its taillights were defective). It remains an open question whether a stop for probable cause might nevertheless be invalid as pretextual if a reasonable officer would not have made the seizure in the absence of an illegitimate motivation. *Smith*, 799 F.2d at 709; *see United States v. Robinson*, 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 470 n. 1, 38 L.Ed.2d 427 (1973). We need not address this issue today because the district court found that the stop was not pretextual. Based upon Officer Brack's testimony that he "stop[s] every car that ... [he] observe[s] doing what Mr. Strickland's car was doing," we cannot hold that the district court's finding was erroneous.[2] *See Bates*, 840 F.2d at 860; *see also United States v. Rivera*, 867 F.2d 1261, 1263–64 (10th Cir. 1989) (stop not pretextual if police routinely stop individuals who drive in manner of defendant).

Strickland relies heavily on this court's opinion in *United States v. Smith* to support his contention that the stop was pretextual and, therefore, that the evidence discovered during the search of his car should be suppressed. This reliance is misplaced, and ignores the important distinction in *Smith* between pretextual investigative stops and nonpretextual stops based upon probable cause of a traffic violation. In *Smith*, we accepted the district court's finding that there was no probable cause for a traffic violation to warrant a stop of the vehicle. 799 F.2d at 708. Additionally, we found that the police officer lacked reasonable suspicion of criminal activity to make an investigatory stop of the vehicle. 799 F.2d at 708. Under those circumstances we held that a subsequent search of the vehicle was invalid because the police offi-

---

2. Strickland was stopped for weaving pursuant to Georgia's Uniform Rules of the Road, which require vehicles to be driven within one lane of traffic. O.C.G.A. § 40–6–48(1). The applicable regulation provides that "a vehicle shall be driv-

en as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." *Id.*

cer would not have made the initial stop absent an illegitimate motivation. *Id.* Strickland's seizure, in contrast, was non-pretextual and based upon probable cause of a traffic violation. *See United States v. Pino,* 855 F.2d 357, 361 (6th Cir.1988) (similarly distinguishing *Smith* ), *opinion amended,* 866 F.2d 147 (6th Cir.1989), *cert. denied,* ⎯⎯ U.S. ⎯⎯, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990).

## SCOPE OF CONSENT

■ Strickland next argues that, even if the seizure was valid, the subsequent search was impermissible because it went beyond the scope of consent given to the officer.[3] Appellant concedes that he consented to a search of his entire car, including his trunk and luggage. Nevertheless, he contends that this consent did not include permission to slash his spare tire to investigate its contents. We agree, but do not reverse because the information gathered by Officer Brack during that portion of the search that was within the scope of consent provided the probable cause to support a search of the tire cavity without consent.

■ A consensual search is confined to the terms of its authorization. *United States v. Blake,* 888 F.2d 795, 798 (11th Cir.1989); *United States v. Rackley,* 742 F.2d 1266, 1271 (11th Cir.1984). The scope of the actual consent restricts the permissible boundaries of a search in the same manner as the specifications in a warrant. *Blake,* 888 F.2d at 798; *United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir.

1988); *United States v. Milian–Rodriguez,* 759 F.2d 1558, 1563 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). If the government does not conform to the limitations placed upon the right granted to search, the search is impermissible. *Blake,* 888 F.2d at 800; *Mason v. Pulliam,* 557 F.2d 426, 429 (5th Cir.1977).[4] In justifying a consensual search, the government bears the burden of establishing that the search was conducted within the purview of the consent received. *Blake,* 888 F.2d at 800.

■ When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass. *See id.* at 800–01. In *Blake,* we recently affirmed a district court's ruling that "the consent given by the defendants allowing the officers to search their 'person' could not, under the circumstances, be construed as authorization for the officers to touch their genitals in the middle of a public area...." 888 F.2d at 800, *aff'g,* 718 F.Supp. 925 (S.D.Fla. 1988). We explained, "it cannot be said that a reasonable individual would understand that a search of one's person would entail an officer touching his or her genitals." *Blake,* 888 F.2d at 800–01.

Similarly, under the circumstances of this case, a police officer could not reasonably interpret a general statement of consent to search an individual's vehicle to include the intentional infliction of damage

**3.** The record is unclear as to whether Officer Brack initially requested permission to search the vehicle or whether Strickland volunteered to have his vehicle searched after the officer brought up the subject of drug couriers. In either case, the legal effect of a statement of consent, whether requested or volunteered, is the same. Nothing in the Constitution prohibits a police officer who permissibly has stopped an individual from *requesting* permission to conduct a search even if he has no basis for suspecting that the individual is carrying any contraband. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bates,* 840 F.2d at 861; *see, e.g., United States v. Maragh,* 894 F.2d 415, 416 (D.C.Cir.1990) (reversing

trial court's suppression of evidence although police detective apparently lacked reasonable suspicion that defendant was carrying contraband when he requested permission to search defendant's bag). Obviously, the absence of reasonable suspicion that the individual is carrying contraband will render the stop itself impermissible unless there is an independent ground justifying the stop. *See Terry,* 392 U.S. at 30, 33, 88 S.Ct. at 1884, 1885–86.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

to the vehicle or the property contained within it. Although an individual consenting to a vehicle search should expect that search to be thorough, he need not anticipate that the search will involve the destruction of his vehicle, its parts or contents. Indeed, it is difficult to conceive of any circumstance in which an individual would voluntarily consent to have the spare tire of their automobile slashed. Unless an individual specifically consents to police conduct that exceeds the reasonable bounds of a general statement of consent, that portion of the search is impermissible. *See id.* at 800.

 The absence of Strickland's consent to the mutilation of his spare tire does not necessitate the suppression of the evidence derived from the tire search, however, if there is another valid basis justifying the intrusion. It is well settled that a vehicle may be searched without either permission or a warrant if there is probable cause to believe that it contains contraband or other evidence which is subject to seizure under law and exigent circumstances necessitate the search or seizure. *United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.1990); *United States v. Alexander,* 835 F.2d 1406, 1408–09 (11th Cir.1988); *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *see United States v. Ross,* 456 U.S. 798, 807–10, 102 S.Ct. 2157, 2164–65, 72 L.Ed.2d 572 (1982). A vehicle search conducted pursuant to probable cause may include any item and compartment in the car that might contain the object of the search. *Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987); *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *Ross,* 456 U.S. at 821 & n. 28, 822, 825, 102 S.Ct. at 2171 & n. 28, 2173; *see California v. Carney,* 471 U.S. 386, 391–92, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985) (delineating compartment searches the Court has upheld); *see, e.g., Chambers v. Maroney,* 399 U.S. 42, 44, 90 S.Ct. 1975, 1977, 26 L.Ed.2d 419 (1970) (search of vehicle included opening concealed compartment under dashboard). Moreover, such a search may include some injury to the vehicle or the items within the vehicle, if the damage is reasonably necessary to gain access to a specific location where the officers have probable cause to believe that the object of their search is located. *See Ross,* 456 U.S. at 817–19, 823, 102 S.Ct. at 2169, 2172; *see, e.g., Carroll v. United States,* 267 U.S. 132, 136, 172–73, 45 S.Ct. 280, 281, 292, 69 L.Ed. 543 (1925) (search of vehicle included tearing open upholstery); *see also Maryland v. Garrison,* 480 U.S. 79, 84–85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987) (scope of lawful search is defined by object of search and places in which there is probable cause to believe that object will be found).

There is no dispute that Officer Brack lacked probable cause to search the vehicle when he initiated his consensual search. The proper scope of his search, therefore, was constrained by a reasonable interpretation of Strickland's statement of consent. Acting reasonably within the scope of consent to search the "entire vehicle," Officer Brack examined the spare tire in the trunk, examined the other four tires of the vehicle, removed the tire to search around the spare tire compartment and facilitate his investigation of the tire, and rolled the spare tire on the pavement. From this consensual search, Officer Brack discovered that the spare had a rusty and bent rim, was made by a different manufacturer from the other four tires of the late model vehicle, seemed an incorrect size for the vehicle, was worn differently from the treads on the other tires, was extremely heavy for a spare tire, and contained something inside it that flopped around when the tire was moved.

 Probable cause for a vehicle search exists when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. *Wilson,* 894 F.2d at 1254; *Alexander,* 835 F.2d at 1409; *Clark,* 559 F.2d at 424. The facts and circumstances upon which a finding of probable cause is based include "the sum total ... and the synthesis of what the police have heard, what they know, and what they observe as

trained officers." *Wilson,* 894 F.2d at 1254–55; *Clark,* 599 F.2d at 424.

Here, the totality of the information garnered by Officer Brack while he was engaged in a permissible consensual search readily provided the probable cause necessary to extend the search beyond the scope of consent. *Cf. Michigan v. Thomas,* 458 U.S. 259, 260–62 & n. 1, 102 S.Ct. 3079, 3080–81 & n. 1, 73 L.Ed.2d 750 (1982) (per curiam) (information gathered during inventory search of vehicle may provide probable cause for full search of vehicle cavities and compartments); *Blake,* 888 F.2d at 800 n. 12 (suggesting that probable cause for search could have been provided by evidence found in search of companion); *United States v. Roy,* 869 F.2d 1427, 1431–33 (11th Cir.) (probable cause for second search of same boat provided by information discovered during first search), *cert. denied,* — U.S. —, 110 S.Ct. 72, 107 L.Ed.2d 38 (1989). The incongruity of a worn, oddly sized tire from a different manufacturer than the other tires of a late model sedan provided the officer with suspicion as to the circumstances of the tire. The tire's bent rim, extreme weight, and flopping sound, provided the officer with at least probable cause to believe that something had been secreted in the tire. The officer's knowledge of drug smuggling techniques and the anomalous presence of items in a spare tire firmly established the probable cause to believe that the items in the tire were contraband. This probable cause, coupled with the obvious exigency that the vehicle could disappear with the contraband if it was not searched immediately, made the warrantless search of the spare tire permissible. *See Wilson,* 894 F.2d at 1255.

## CONCLUSION

The district court properly found that there was probable cause of a traffic violation justifying the stop of appellant's vehicle. Once the vehicle was stopped, appellant's statement of consent provided the officer with permission to conduct a thorough search of the vehicle. The information gathered while the officer was acting within the scope of the consensual search provided the probable cause to conduct a search of the spare tire that exceeded the scope of consent. The judgment of the district court denying appellant's motion to suppress the evidence obtained during the search of his vehicle is, therefore, AFFIRMED.