[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10920
Non-Argument Calendar

_____

D.C. Docket No. 3:19-cr-00041-RV-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWIN EDGARDO TERCERO,
a.k.a. Edwin Edgardo Tercero-Martinez,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 14, 2021)

Before JORDAN, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Edwin Tercero appeals his conviction and sentence for one count of illegally transporting aliens within the country for private financial gain. On appeal, Tercero raises two issues. First, he challenges the district court's admission of evidence, which was offered under Fed. R. Evid. 404(b), regarding three prior traffic stops that he was involved in: (1) a 2010 Florida stop, (2) a 2016 Alabama stop, and (3) a 2018 Mississippi stop. Specifically, he argues that the evidence was inadmissible both because it did not meet the test for admissibility under Rule 404(b) and because the stops were not supported by reasonable articulable suspicion. He also asserts that the statements he made after the Alabama and Mississippi stops were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Second, he contends that, at sentencing, the district court: (1) improperly departed above his guideline range without sufficient advance notice; and (2) relied on an improper factor—namely, that he had previously smuggled "hundreds of illegal aliens," some of them with criminal records, without being prosecuted for it—that was based on speculation rather than admissible evidence.

We address each issue in turn.

## I.

"We review for abuse of discretion a district court's ruling on the admissibility of evidence of uncharged conduct under Rule 404(b)." *United States v. Perez*, 443 F.3d 772, 774 (11th Cir. 2006). Evidentiary errors are subject to

harmlessness review. *United States v. Green*, 873 F.3d 846, 866 (11th Cir. 2017).

"A non-constitutional evidentiary error does not warrant reversal unless there is a

reasonable likelihood that the error affected the defendant's substantial rights," and

"[w]e look to whether the error had substantial influence and whether enough

evidence supports the result apart from the error." *Id.* at 867.

"Rule 404(b) prohibits [admitting] evidence of another crime, wrong, or act

to prove a person's character in order to show action in conformity therewith."

*United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012); *see* Fed. R. Evid.

404(b)(1). Such evidence, however, "may be admissible for another purpose, such

as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) 'is

one of inclusion which allows extrinsic evidence unless it tends to prove *only*

criminal propensity." *Sanders*, 668 F.3d at 1314 (emphasis added). For such

evidence to be admissible, (1) it must be relevant to an issue other than a

defendant's character; (2) there must be sufficient proof of the prior act to allow a

jury to determine that the defendant committed the prior act, and (3) the evidence's

probative value must not be substantially outweighed by undue prejudice and

otherwise meet the requirements of Rule 403. *See id.* As to the first prong of the

Rule 404(b) admissibility test, we have held that a defendant's prior alien-

smuggling conviction was relevant to establish his knowledge of the aliens' illegal status. *Perez*, 443 F.3d at 779-80.

A decision on the third prong, "lies within the sound discretion of the district judge," and it requires consideration of, among other things, "prosecutorial need, overall similarity between the extrinsic act and the charged offense, [and] temporal remoteness." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997). "A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005). On the other hand, though, the "more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant," since it increases "[t]he likelihood that the jury will convict the defendant because he is the kind of person who commits this particular type of crime or because he was not punished for the extrinsic offense." *United States v. Beechum*, 582 F.2d 898, 915 n.20 (5th Cir. 1978) (*en banc*). A limiting instruction after the close of evidence can lower the risk of undue prejudice to a defendant. *See Ramirez*, 426 F.3d at 1350, 1354. "A jury is presumed to follow the instructions given to it by the district judge." *Id.* at 1352 (reviewing motion for severance).

Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), police can "stop and briefly detain a person for investigative purposes" if they have "a reasonable suspicion

4

supported by articulable facts that criminal activity 'may be afoot,'" even if they lack probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "An officer may conduct a brief investigative stop of a vehicle, analogous to a *Terry*-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990). On the other hand, "[i]nvestigatory stops are invalid if they are solely based on 'unparticularized suspicion' or 'inarticulate hunches.'" *Id.* Nevertheless, "reasonable suspicion may exist even if each fact 'alone is susceptible of innocent explanation,'" and the proper approach to evaluating reasonable suspicion "examines the 'totality of the circumstances.'" *United States v. Bautista-Silva*, 567 F.3d 1266, 1273 (11th Cir. 2009).

When an officer reasonably suspects that a particular vehicle may contain aliens who are illegally in the country, "he may stop the car briefly and investigate the circumstances that provoke suspicion." *Id.* at 1271-72. This must be based on "more than an inchoate and unparticularized suspicion or hunch," but incudes "specific articulable facts, together with rational inferences from those facts." *Id.* at 1272. Factors an officer may consider include, but are not limited to: (1) characteristics of the area where the car is encountered; (2) prior experience with alien traffic; (3) driver behavior; (4) vehicle aspects; and (5), while alone

insufficient to justify stopping a car, "the apparent Mexican ancestry of the occupants." *See id.* at 1273.

"The right to *Miranda* warnings attaches when custodial interrogation begins." *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). Although a person would not feel free to ignore the directive to pull over or leave a traffic stop, ordinary traffic stops are more like *Terry* stops, which are not subject to *Miranda*, than formal arrests. *Berkemer v. McCarty*, 468 U.S. 420, 436-40 (1984).

Admission of evidence obtained in violation of a defendant's Fourth Amendment rights is barred by "[t]he 'exclusionary rule.'" *United States v. Taylor*, 935 F.3d 1279, 1288 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 1548 (2020). In this Circuit, Rule 404(b) evidence is subject to the exclusionary rule. *See United States v. Renteria*, 625 F.2d 1279, 1281-82 (5th Cir. 1980); *also United States v. Hill*, 60 F.3d 672, 680 & n.4 (10th Cir. 1995) (noting that many courts had evaluated Fourth Amendment exclusionary rule challenges to Rule 404(b) evidence and collecting cases, including *Renteria*).

A person violates federal law when he knows, or is in reckless disregard of the fact, that an alien came to, entered, or remained in the United States illegally, and transports the alien within the United States in furtherance of such violation of law. 8 U.S.C. § 1324(a)(1)(A)(ii). If a defendant commits the offense "for the

6

purpose of commercial advantage or private financial gain," he is subject to imprisonment for up to 10 years.  *Id.* § 1324(a)(1)(B)(i).

Here, both the Florida and Alabama traffic stops were supported by reasonable articulable suspicion, and the statements Tercero made after the Alabama stop were not obtained in violation of *Miranda*.  Further, the evidence about these stops was admissible under Rule 404(b). We need not decide whether the Mississippi stop was supported by reasonable suspicion, because, even if its admission was error, it was harmless as explained below.

First, the 2010 Florida stop was supported by ample reasonable articulable suspicion.  Among other reasons, the officer testified that he was prompted to stop Tercero because: (1) he was traveling on I-75, which had human smuggling taking place on it; (2) Tercero drove a minivan, a high-capacity type of car valuable to smugglers to increase profit margins, which "appeared to have a heavy weight in it"; (3) Tercero was Hispanic; (4) the car had Texas plates, which was "highly exploited by people involved in alien smuggling"; and (5) the car itself turned out to be registered to a Houston address that matched an address for an alien smuggling investigation.  Thus, this stop was supported by specific articulable facts that alien smuggling was occurring.  *See Bautista-Silva*, 567 F.3d at 1270-73.

Second, as to the 2016 Alabama stop, the officer testified that he stopped the

7

car because the license plate came back registered to a different colored van, it was

a high-capacity car, and it was an anomaly for a car registered in Houston to travel

east on U.S. 90 instead of I-10. This was sufficient reasonable articulable

suspicion to stop the vehicle. *See Bautista-Silva*, 567 F.3d at 1270-73. Further, the

questioning did not violate *Miranda*. *See Berkemer*, 468 U.S. at 436-40.

Finally, we can assume <u>arguendo</u> that the district court erred in admitting

evidence about the Mississippi stop, but that error was harmless given the strength

of the evidence against Tercero at trial. The intrinsic evidence in the case showed

he was pulled over in a car that fit the profile of a smuggler and, once stopped, he

lied about his destination and the purpose behind his travel. His passengers, who

were in the country illegally, testified about their entry into the United States and

that Tercero was transporting them to South Florida. Two of the passengers

acknowledged that either their family or friends paid Tercero to take them to their

destination. Considering that evidence, in addition to the extrinsic evidence about

the Florida and Alabama stops, which took place during previous incidents in

which he had been transporting unlawfully present aliens, there is no reasonable

likelihood that the admission of the evidence about the Mississippi stop affected

his substantial rights. Thus, we affirm Tercero's conviction.

II.

8

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). We must ensure no significant procedural error was made, including "selecting a sentence based on clearly erroneous facts." *Id.* at 51. Factual findings are reviewed for clear error. *United States v. Hall*, 965 F.3d 1281, 1293 (11th Cir. 2020). District courts cannot base factual findings on speculation, but they may make reasonable inferences from facts in the record. *United States v. Creel*, 783 F.3d 1357, 1359 (11th Cir. 2015). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011). As to a sentence's substantive reasonableness, "[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

We review objections to the procedural reasonableness of a sentence for plain error when the objection was not raised at sentencing. *United States v. Waters*, 937 F.3d 1344, 1358 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2516 (2020). We review whether a district court considered an impermissible factor for

plain error if that argument was not raised in the district court.  *See United States v. Cavallo*, 790 F.3d 1202, 1237-38 (11th Cir. 2015) (reviewing for plain error a defendant's contention, not raised in the district court, "that the district court impermissibly considered his sex when imposing his sentence," an impermissible factor under the Guidelines).  "Under plain error review, we can correct an error only when (1) an error has occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Waters*, 937 F.3d at 1359.

A departure and a variance both lead to a sentence outside the advisory guideline range, they but get there in different ways.  *Hall*, 965 F.3d at 1295.  A variance is "when the court determines that a guidelines sentence will not adequately further the purposes reflected in 18 U.S.C § 3553(a)," whereas a departure refers to "'a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines,' including the departure provisions." *Id.*  When considering a departure, the district court must give parties advance notice, but that is not required if it is considering a variance.  *Id.* at 1295-96.  In deciding whether a district court varied or departed, we look at "the [district] court's reasoning and what it said about that reasoning." *Id.* at 1296.  "Specifically, we look at whether it cited a specific guidelines departure provision in setting the defendant's sentence, or whether its rationale was

10

based on the § 3553(a) factors and a determination that the guidelines range was inadequate." *Id.*

Further, we have said that "the fact that the work a variance does might also be done by a departure proves nothing." *Id.* at 1297. "Given the breadth of the § 3553(a) factors and the number of departure provisions, there is substantial overlap between the two," which is a result not of a plan or original design logic, but rather "from the felt needs of" the decision in *United States v. Booker*, 543 U.S. 220 (2005). *Hall*, 965 F.3d at 1297. What matters, simply, is if the district court's grounds for the variance comfortably fit under § 3553(a), and it is irrelevant if they also might have fit a departure provision. *See id.*

The district court did not improperly impose an upward departure, as Tercero argues, because its above-guideline sentence was the result of a variance instead of a departure. The district court explicitly stated that it was varying, not departing, and did not cite a departure provision. Instead, its analysis indicated it varied based on multiple 18 U.S.C. § 3553(a) factors.

Although Tercero frames his second sentencing challenge as one of substantive reasonableness, it in fact is a procedural reasonableness challenge. The gravamen of his argument is that the district court erred by increasing his sentence in reliance on the unsupported finding that he previously smuggled hundreds of illegal aliens without being prosecuted. Of note, he does not contend considering

11

prior un-prosecuted conduct is improper in the abstract, but only that it was improper here because the finding was speculative and unsupported by admissible record evidence. This is properly treated as a procedural reasonableness challenge that the sentence was based on clearly erroneous facts. Further, it is subject to plain error review because Tercero did not raise it in the district court.

Tercero cannot show error, much less plain error. On three occasions—the stop for which he was convicted in this case, plus the Florida and Alabama stops—he was caught transporting illegal aliens. Two of the trips involved transporting nine people in a van and the other involved five people in a sedan. Given the district court's knowledge of the facts from trial and the presentence investigation report regarding his prior trips and the mileage he put on his various cars, it was reasonable to infer that he had knowingly smuggled aliens within the United States many more times than the three times he was caught. Further, with an average aliens-per-trip figure of nearly 8, a reasonable estimate of the number of aliens he transported would easily exceed 100. Additionally, some of the aliens Tercero transported had been convicted of illegally entering the country, and one had outstanding warrants for other crimes. On the whole, we are not left with a definite and firm conviction that the district court made a mistake in finding that more than a hundred aliens, including aliens with criminal records, were brought into and

transported within the United States as a result of Tercero's conduct.  Thus, the finding was not clearly erroneous, and we affirm Tercero's sentence.

**AFFIRMED.**