[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11628

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES THOMAS BUTLER, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cr-00179-TJC-MCR-1

_____

Before LAGOA, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, defendant James Butler appeals the district court's denials of his motions to suppress evidence obtained from a forensic examination of a Samsung Galaxy model SM-G935A smartphone (the "Samsung smartphone"). Butler consented to a search of the Samsung smartphone during the execution of a search warrant at his residence.

On appeal, Butler argues that (1) the government's forensic search of the Samsung smartphone exceeded the scope of his consent, and (2) the district court, in evaluating the reasonableness of law enforcement's delay in conducting this forensic search, erred when it found that he did not have a significant possessory interest in the smartphone. After careful review of the record and the parties' briefs, we affirm the district court's denials of Butler's motions to suppress.

## I.    FACTUAL BACKGROUND

On October 10, 2018, Butler was charged with (1) sexual exploitation of a minor for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a), (e) ("Count 1"), and (2) possession of a black Samsung smartphone containing visual depictions involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) ("Count 2").

On March 4, 2019, Butler moved to suppress his statements made during the search of his residence on May 2, 2018, and any evidence obtained from the search of his Samsung smartphone. On December 11, 2019, Butler filed a second motion to suppress all evidence obtained from the forensic search of his Samsung smartphone.

A magistrate judge held two hearings on Butler's motions to suppress. The hearing testimony revealed the following details about the May 2, 2018, search at Butler's residence and the June 26 and August 15, 2018, forensic examinations of Butler's Samsung smartphone.

## A.     May 2, 2018, Search of Butler's Residence

On May 2, 2018, federal and state law enforcement agents executed a search warrant at Butler's residence in Jacksonville, Florida. The agents were investigating Paul Edward Lee, Jr., who lived in the residence, for soliciting child pornography. All occupants of the residence, including Butler, were registered sexual predators or sexual offenders.

On the morning of May 2, 2018, the agents (1) entered the residence, (2) handcuffed all of the residents for officer safety, and (3) escorted the residents to a carport. While the residents were gathered in the carport, one of the agents told the residents that a federal search warrant was being executed at the property.

## B.    Agents Interview Butler

After clearing the premises, the agents began to interview the residents.  Federal Bureau of Investigation ("FBI") Agent Nicholas Privette and Jacksonville Sheriff's Office Detective Brent Ellis approached Butler and removed Butler's handcuffs.  The agents told Butler that (1) Butler was not under arrest, and (2) the agents wanted to speak with him if he was willing to be interviewed.

Butler told the agents that he was "willing to help . . . in any way that [they] needed" but asked if he could make a call to let his employer know that he was going to be late for work that day. With the agents' permission, Butler used the Samsung smartphone, which he kept on his belt holster, to call his employer.

Agent Privette then showed Butler a folder containing sexually explicit text messages with a minor and told Butler that the agents were at the residence "because somebody was having contact with a minor."

The agents asked Butler some questions about Lee.  In response to these questions, Butler told the agents that (1) he had not used Lee's phone for any reason, and (2) he had not used Lee's phone to engage in the types of criminal activity that the agents were investigating.

## C.    Butler Consents to a Search of the Samsung Smartphone

Agent Privette then told Butler that the agents were executing a search warrant and were looking for vehicles and

electronic devices.[1]  Agent Privette asked if Butler owned any phones other than the Samsung smartphone, and Butler said that the Samsung smartphone was the only phone he owned.

Agent Privette asked if he "could take a look at" the Samsung smartphone.  Butler consented and handed the smartphone to Agent Privette.

Immediately after handing over the phone, Butler retrieved a second phone from his pocket and handed that phone to Agent Privette.  Butler told the agents that (1) the Samsung smartphone on his holster was his mother's phone, (2) he used the Samsung smartphone to take photographs for work because the phone had a good camera, and (3) the second phone, which Butler had retrieved from his pocket, was Butler's personal phone.  Agent Privette testified that Butler was "cooperative" and willingly gave Agent Privette the phones.

Next, Agent Privette asked Butler if he could "search" both phones, and Butler stated that he could do so.

Agent Privette told Butler that he was going to take both phones to a table behind him so that other agents who handled technical matters could "take a look at them."  Agent Privette asked Butler if that was okay, and Butler said that it was.

---

[1] The search warrant authorized law enforcement to search the residence, and the list of items to be "seized and searched" included "cellular telephones" and "'smart' phones."

After walking away with the phones, Agent Privette realized that the Samsung smartphone was locked, so he brought the phone back to Butler and asked: "If it's okay with you, can you unlock it?" Butler consented and punched in the password to unlock the phone.

Agent Privette asked if Butler could show him the password "so that if [the phone] locked back up, . . . the technical experts or [Agent Privette] would remember what it was." Butler provided the password to Agent Privette and agreed that the agents could use that password to unlock the phone.

After Agent Privette gave the two phones to the technical personnel, he asked Butler: "Should I have any questions based on the content of either of the phones, is it okay if I come back and we talk about that?" Butler responded: "No problem. If you have any questions, you let me know." Butler never revoked his consent to the search.

## D.    Agent Privette Asks Butler about the Applications on the Samsung Smartphone

After returning to the table with the technical personnel, Agent Privette learned that several applications were running in the background of the Samsung smartphone. These applications were (1) an adult pornography website, and (2) a text-based chat log on a program called Google Hangouts, containing a conversation of a sexual nature between an adult and a younger person.

22-11628                 Opinion of the Court                      7

Agent Privette first showed Butler the adult pornography website that was running on the Samsung smartphone and asked Butler if he had searched for the website. Butler said that the website "didn't look familiar" but it was "probably something that he might look at." Agent Privette told Butler that the girls in some of the pictures looked "pretty young" and warned him to be more careful.

Agent Privette then asked Butler if he recognized the Google Hangouts chat or the name "Peanut the Unicorn," which was the username associated with the chat. Butler stated that he did not know anything about the chat and did not recognize the username.

Later, FBI Agent David Busick informed Agent Privette that a small white piece of paper with the handwritten words "Google Hangouts - Peanut the Unicorn," "Dcups," and "Kik" had been found in Butler's room. When Agent Privette asked Butler about the note, Butler stated that (1) he did not recognize the note, and (2) he did not believe the note was found in his bedroom.

Agent Privette escorted Butler back into the residence so Butler could see where the agents had found the note. Agent Privette introduced Butler to Agent Busick, who told Butler that the note was discovered in Butler's room inside a grocery bag that contained receipts and other papers that appeared to be associated with Butler. Butler acknowledged that the room and the bag belonged to him.

Agent Privette told Butler that the FBI would try to identify the person associated with the "Peanut the Unicorn" username.

Butler, who now appeared "frustrated," raised his voice and reiterated that he did not know anything about the note or "Peanut the Unicorn." When Agent Privette told Butler that he would try to identify and talk to the person with that username, Butler said, "that would be fine," and added, "whatever they say, just remember that I was here and I told you the truth today."

The FBI agents subsequently entered the Samsung smartphone into evidence. The agents returned Butler's personal phone to him after the interview ended because they saw nothing on that phone that required further investigation.

### E.     Butler's Arrest and the Forensic Examination of the Samsung Smartphone

Later that same day (May 2, 2018), state probation officers arrested Butler for violating the terms and conditions of his supervised release.

On June 26, 2018, Christina Polidan, an FBI forensic examiner, completed a logical extraction of the Samsung smartphone. Polidan explained that a logical extraction is a "very basic extraction" that shows what the user can see, including "all text messages, videos, calendar, call logs, [and] items like that."

On August 15, 2018, Polidan conducted a physical extraction of the smartphone. Polidan testified that a physical extraction is "a much more detailed extraction" that "can get information such as deleted items, file system information," and even "data from third-party applications."

Polidan testified that the delay between the May 2 seizure of the Samsung smartphone and the two extractions was due to administrative backlog. At the time of the seizure, Polidan and one other forensic examiner were covering all of North Florida.

## F.    Child Pornography Is Found on the Samsung Smartphone

On September 21, 2018, FBI Agent Abbigail Beccaccio reviewed the contents of the logical extraction of the Samsung smartphone. After reviewing this information, Agent Beccaccio applied for a federal search warrant for Butler's residence, and this warrant was issued on October 1, 2018.

The search warrant application included an affidavit from Agent Beccaccio, who stated that the logical extraction of the smartphone revealed (1) 65 videos that appeared to depict a minor in a bedroom, (2) 35 screenshots captured from these videos, and (3) 8 images of instructions from a user manual for a remote wireless hidden camera, which was connected to a router.[2] At least five of the videos captured the lascivious exhibition of the minor's genitalia, and at least one recorded the minor as she masturbated. The minor in these videos did not appear to be aware of the camera. Agent Beccaccio stated that she (1) identified the individual in the images and videos, (2) confirmed that this individual was under the age of 18 years old, (3) learned that the

---

[2] The smartphone also contained a video of a minor in a two-piece bathing suit on a beach. Several portions of the video focused on the minor's breasts and genitalia.

minor was living at a Jacksonville residence with Butler's mother, and (4) discovered that, as of September 4, 2018, Butler had listed this address as his current residence.

### G.      Butler's Testimony at His Probation Violation Hearings

On June 7, 2018, and August 27, 2018, the Florida Commission on Offender Review held two probation violation hearings for Butler. The recordings and transcripts from these probation-violation hearings were introduced at Butler's suppression hearings.

At the June 7, 2018, probation-violation hearing, Butler testified that he "willingly" offered his phone and his mother's phone to the officers.

At the August 27, 2018, probation-violation hearing, Butler acknowledged that he handed over his personal phone willingly, but this time Butler stated that he felt he had no choice in handing over his mother's phone. Butler also testified that (1) his personal phone was the phone on the belt holster on his hip, and (2) the smartphone in his pocket belonged to his mother. As discussed earlier, Agent Privette's testimony was that Butler had the smartphone in his belt holster and Butler told him the phone in his belt holster was his mother's and the phone from his pocket was his personal phone.

At some point after the August 27, 2018, probation-violation hearing, Butler was released from state custody.

## H.     Butler's Testimony at the Suppression Hearings

At the suppression hearings, Butler testified that he did not consent to the FBI taking his mother's smartphone from the residence on May 2, 2018.  Once again, Butler's account was not consistent with (1) Agent Privette's testimony that Butler willingly gave both phones to the agents, or (2) Butler's testimony at the June 7, 2018, probation-violation hearing that he willingly offered his phone and his mother's phone to the officers.

Butler also testified that: (1) he was not aware that the agents were going to perform a forensic examination of the smartphone when it was seized; (2) he never was told how to revoke his consent to the search; and (3) he would have revoked his consent if he had known that the FBI intended to perform the forensic examination.

Further, Butler testified that, after the Samsung smartphone was taken, Agent Beccaccio gave him a card with her name and number, and Privette's name.  Agent Beccaccio told Butler: "You can tell your mother that if she wants her phone back, she can contact us."

Butler was in state custody from approximately May 2, 2018, to August 31, 2018.  Butler testified that during that time he was not allowed to call anyone who would not accept collect calls.

## I.     Magistrate Judge's Reports

On June 12, 2019, the magistrate judge issued a report and recommendation ("R&R"), recommending that Butler's first motion to suppress be denied.    The magistrate judge

(1) determined that Butler voluntarily consented to a search of both phones and never revoked his consent, (2) accepted Agent Privette's testimony that the Samsung smartphone was holstered on Butler's belt and his personal phone was in his back pocket, and (3) observed that there were "multiple inconsistencies" in Butler's testimony.

On February 13, 2020, the magistrate judge issued a second R&R, recommending that the district court also deny Butler's second motion to suppress. As to the scope of Butler's consent, the magistrate judge determined that (1) Butler had not placed any explicit limitations on the scope of the search, and (2) Butler "never requested the return of the smart phone."

The magistrate judge rejected Butler's argument that he did not know how to reach the agents to revoke his consent. In that regard, the magistrate judge found (1) a person with Butler's intelligence and experience would have figured out how to reach the agents, and (2) the agents gave Butler a card with their contact information and told him that if his mother wanted the smartphone back, she could contact them. The magistrate judge also found that (1) Butler could not have used the Samsung smartphone for work while he was in jail; (2) Butler was away from work until at least the end of August 2018, at which point the extractions had already occurred; and (3) Butler waived his possessory interest in the Samsung smartphone by consenting to the search of that smartphone.

Next, the magistrate judge determined that the eight-week and fifteen-week delays between the May 2 seizure of the Samsung smartphone and the June 26 logical and August 15 physical extractions of this phone were not unreasonable, given the credible testimony that the delays were due to backlog. The magistrate judge observed that, because Butler never requested the return of the Samsung smartphone, he could not argue that the delay adversely affected his Fourth Amendment rights. The magistrate judge concluded that, because Butler consented to the search of the Samsung smartphone without limiting or revoking his consent, the agents did not need to obtain a warrant before conducting the forensic examination.

**J.      District Court's Orders**

Over Butler's objections, the district court adopted both R&Rs, accepted the magistrate judge's credibility findings, and denied Butler's motions to suppress.

As to the reasonableness of the eight-week and fifteen-week delays, the district court found that (1) there was no Fourth Amendment violation, but (2) "law enforcement should have nonetheless obtained a warrant after the passage of such a long time, especially given that this was a forensic search of a cell phone." Citing *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473 (2014), the district court recognized that "[u]nder Fourth Amendment jurisprudence, cell phones are unique." However, the district court explained that (1) *Riley* did not restrict consensual searches, and (2) Butler's possessory interest in the Samsung

smartphone was "minimal," citing the pages of the R&R stating that a defendant's consent to a search of his property waives his possessory interest in that property.

The district court also found that (1) Butler never revoked his consent to the search or requested the return of the Samsung smartphone, (2) the government had a legitimate interest in retaining that smartphone because Butler admitted to using it to view pornography, and (3) Butler had not shown that the delay caused him any prejudice.

## K.    Trial and Sentencing

After the denial of his motions to suppress, Butler proceeded to trial.  The jury found Butler guilty as charged.

Because Butler had a prior sex offense conviction, the probation officer determined that Butler was a repeat and dangerous sex offender under U.S.S.G. § 4B1.5(a)(1)(A) and increased his criminal history category from III to V.  With a total offense level of 39, Butler's advisory guideline range was 360 to 840 months' imprisonment.  The district court sentenced Butler to concurrent terms of 420 months' imprisonment as to Count 1 and 240 months' imprisonment as to Count 2, followed by 25 years of supervised release.

## II.    DISCUSSION

As an initial matter, while Butler challenged the voluntariness of his consent in the district court, he abandoned any challenge to the district court's ruling on that issue by failing to

brief it on appeal. *See United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc). Additionally, Butler does not challenge the district court's credibility determinations on appeal. Thus, we need address only the district court's findings that (1) the government's logical and physical extractions were within the scope of Butler's consent, and (2) Butler had a "minimal" possessory interest in the Samsung smartphone.[3]

## A.    Consent to Search

On appeal, Butler argues that the government's forensic searches of the Samsung smartphone exceeded the scope of his consent.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A search or seizure that is lawful at its inception may nonetheless violate the Fourth Amendment if the manner of its execution unreasonably infringes on a possessory interest protected by the Fourth Amendment. *See United States v. Jacobsen*, 466 U.S. 109, 124, 104 S. Ct. 1652, 1662 (1984).

---

[3] "When considering a district court's ruling on a motion to suppress, we review factual findings for clear error and application of law to the facts *de novo*." *United States v. Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018). "Clear error lies only where the record leaves us with the definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted). Because the government was the prevailing party below, the district court's factual findings are construed in the light most favorable to it. *See id.*

"A consensual search is confined to the terms of its authorization. The scope of the actual consent restricts the permissible boundaries of a search in the same manner as the specifications in a warrant." *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990) (citations omitted). Further, "[w]hen an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." *Id.*

"Whether limitations were placed on the scope of consent, and whether the search conformed to those limitations, is a question of fact determined by the totality of the circumstances." *United States v. Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018). A district court's factual findings as to these two issues will not be overturned unless they are clearly erroneous. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

## B.    Scope of Butler's Consent

Here, the district court did not err in determining that the government's logical and physical extractions of the Samsung smartphone were within the scope of Butler's consent.

First, Butler argues that (1) he agreed only to let law enforcement "take a look" at the Samsung smartphone, and (2) his consent did not extend to logical and physical extractions of the smartphone's contents outside his presence almost five months later. Butler, however, did not merely agree to let Agent Privette

"take a look" at his phone. Rather, the record evidence shows that: (1) Butler consented when Agent Privette asked if he "could take a look at" and "search" the Samsung smartphone; (2) Butler allowed Agent Privette to take the Samsung smartphone to technical personnel; (3) Butler agreed to unlock the phone for Agent Privette; (4) Butler gave Agent Privette the phone's password, allowing technical personnel to examine the Samsung smartphone outside his presence; and (5) Butler agreed to answer any questions from Agent Privette about the contents of the Samsung smartphone.

Additionally, during the May 2, 2018, search, Butler was informed by Agent Privette that the agents were investigating sexually explicit communications with a minor. *See Plasencia*, 886 F.3d at 1342–43 (observing that, in assessing the scope of a consent-based search, courts consider "what the parties knew at the time to be the object of the search" (quotation marks omitted)). Under these circumstances, a reasonable person would understand Butler's statements that the agents could "take a look at" and "search" his phones as extending to a forensic search of the phone's contents for sexually explicit communications, videos, and images. *See id.*

Further, Butler did not place any time limit on the search. Over the next five months, Butler did not make any attempt to revoke, limit, or modify his consent in any way. Given the absence of a specific time limit or a revocation, the agents conducting the forensic search could reasonably interpret the original voluntary

consent to encompass the administrative delays that occurred before the forensic examinations were conducted. *See Strickland*, 902 F.2d at 941; *see also United States v. Thurman*, 889 F.3d 356, 361–62, 368 (7th Cir. 2018) (concluding that a defendant's verbal consent to a search of his cell phone extended to a forensic examination of the phone where (1) the purpose of the search was to investigate the defendant's recent drug sales, (2) the defendant showed the agents names and numbers for drug-related contacts in the phone without placing any limitations on his consent, and (3) the defendant did not seek the return of the phone).

Second, Butler contends that he could not have revoked his consent because (1) he did not know the FBI intended to search the phone, and (2) he was in state custody without "access to the normal channels of communication." This contention lacks merit.

For starters, the record shows Butler knew that the FBI intended to search the Samsung smartphone. Indeed, Butler consented to a "search" of this phone, provided the agents with the phone's password, and allowed Agent Privette to take the phone to agents who handled technical matters. After that examination, Agent Privette informed Butler that (1) a pornographic website and a Google Hangouts chat were running on the Samsung smartphone, and (2) the FBI would try to identify the person associated with the "Peanut the Unicorn" username on the Google Hangouts chat found on the smartphone. After Butler's interview with Agent Privette concluded, the agents returned Butler's personal phone but kept the Samsung smartphone, and Butler did

not object or withdraw his consent. These facts show that (1) Butler knew that FBI intended to search his Samsung smartphone and (2) Butler had reason to suspect that the agents would conduct a forensic search of the phone.

After consenting to a search of the Samsung smartphone, Butler had multiple opportunities to revoke or limit his consent during his interview with Agent Privette on May 2, 2018, but Butler did not do so. Later that day, Agent Beccaccio gave Butler a card with her contact information so that his mother could request the return of the Samsung smartphone. Even if Butler lacked "access to the normal channels of communication" after he was arrested on May 2, 2018, there is no indication in the record that he ever attempted to contact Agent Beccaccio or ask another person to request the return of the Samsung smartphone on his behalf.

Based on the record as a whole, we conclude that the forensic examinations of the Samsung smartphone did not exceed the scope of Butler's consent.[4]

---

[4] Butler also argues that the government did not have probable cause to believe that a crime had been committed when it conducted a forensic search of his smartphone on September 21, 2018. However, because Butler consented to the search of his smartphone and because the forensic search did not exceed the scope of Butler's consent, we need not address this argument. *See United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (observing that "[a] search conducted pursuant to consent is a recognized exception to the requirements of probable cause and a search warrant").

### C.    Violation of Possessory Interest

Next, Butler contends that, in evaluating the reasonableness of the search, the district court failed to give sufficient weight to his substantial possessory interest in the smartphone, relying on *Riley* and *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009).

When evaluating the reasonableness of the government's delay in obtaining a search warrant, we must carefully balance governmental and private interests. *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). In doing so, "rather than employing a *per se* rule of unreasonableness," this Court "evaluate[s] the totality of the circumstances presented by each case." *Id.* (quotation marks omitted). "The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." *Mitchell*, 565 F.3d at 1351 (quotation marks omitted).

In *Riley*, the Supreme Court observed that defendants have a heightened privacy interest in cell phones, which the Supreme Court described as "minicomputers." 573 U.S. at 403, 134 S. Ct. at 2494. The *Riley* Court held that *the search-incident-to-arrest exception to the warrant requirement* does not empower law enforcement officers to search the contents of an arrestee's cell phone. *Id.* at 385–86, 134 S. Ct. at 2484–85. The Supreme Court noted that the typical search incident to arrest turns up a limited quantity of evidence—namely, those items that are on the arrestee's person, such as a wallet—whereas the search of cell phone data could reveal more information than an "exhaustive search of a

house." *Id.* at 393–97, 134 S. Ct. at 2489–91. *Riley*, however, does not address searches where the defendant consents.

More fundamentally, our Court has since identified a non-exclusive list of factors to consider in determining whether a post-seizure delay is unreasonable: (1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether the person consented to the seizure; and (4) the government's legitimate interest in holding the property as evidence. *Laist*, 702 F.3d at 613–14.

Here, the district court properly found Butler's possessory interest was minimal. The district court recognized that cell phones are entitled to "unique" Fourth Amendment protection but correctly explained that *Riley* did not restrict consensual searches.

Butler relies heavily on our *Mitchell* decision, but that search was not consensual either and was a seizure of a computer hard drive based on probable cause. 565 F.3d at 1350–53. In *Mitchell*, our Court held that the government's 21-day delay in securing a search warrant, *while holding a computer hard drive based on probable cause,* was unreasonable. *Id.* Our Court reasoned that (1) defendant Mitchell had a "substantial" possessory interest in the hard drive, given that "[c]omputers are relied upon heavily for personal and business use," and (2) the government's justification for the delay—that the case agent had to attend a training conference—was "insufficient." *Id.* at 1351–52. *Mitchell* is inapposite here because the search in that case was based on probable cause, not consent. *See id.* at 1350–53.

In contrast, Butler's possessory interest in the smartphone was diminished for several reasons. First, and most importantly, Butler consented to the search of the smartphone, and he did not revoke or modify his consent. *See United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011) ("[W]here a person *consents* to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires *voluntary* tender of property."). Second, Butler did not request the return of his smartphone before the forensic examinations were completed. *See United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (observing that, if "the person from whom the item was taken ever asserted a possessory claim to it[,] . . . this would be some evidence (helpful, though not essential) that the seizure in fact affected [his] possessory interests").

Further, Butler told the agents that he used the Samsung smartphone for work, but he was in jail starting on May 2, and he could not have used that phone for work while he was in jail. In fact, Butler was not released from state custody until after the logical and physical extractions occurred on June 26, 2018, and August 15, 2018. Thus, the district court properly found that Butler's possessory interest in the smartphone was "minimal."

Butler does not challenge the district court's other findings concerning the reasonableness of the delay in searching the smartphone. Therefore, he has not shown any error in the district court's determination that the government's delay in searching the Samsung smartphone was not unreasonable.

### III.    CONCLUSION

For the reasons outlined above, we affirm the denials of Butler's motions to suppress.

**AFFIRMED.**